113 So.2d 503

**ALABAMA PUBLIC SERVICE COMMISSION**

v.

**SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY.**

3 Div. 753.

Supreme Court of Alabama.

June 25, 1959.

362

MacDonald Gallion, Atty. Gen., John F. Proctor, Asst. Atty. Gen., Maurice F. Bishop, Birmingham, and Wm. F. Black and J. Douglas Harris, Montgomery, for the Commission.

R. E. Steiner, Jr., Steiner, Crum & Baker, Montgomery, Jas. A. Simpson, Lange, Simpson, Robinson & Somerville, Birmingham, and Jefferson Davis and Drury B. Thompson, Atlanta, Ga., for Southern Bell Tel. & Tel. Co.

J. M. Breckenridge, Birmingham, for City of Birmingham, amicus curiae.

PER CURIAM.

In the original opinion in this case (Alabama Public Service Commission v. Southern Bell Telephone & Telegraph Company, 268 Ala. 312, 106 So.2d 163), mention was made of the taking of additional testimony in further proceedings after remandment to the Public Service Commission. Both the Public Service Commission and the Telephone Company have petitioned us to state more definitely what was intended in that respect. While the time for filing an application for rehearing has passed (Rule 34, Revised Rules of the Supreme Court of Alabama, effective June 1, 1955, 261 Ala. XIX, XXXII, Code 1940, Tit. 7 Appendix) we have held that "during the term of this court in which a judgment is entered, we have the right to order a case placed on our rehearing docket for further consideration." Birmingham Electric Co. v. Alabama Public Service Commission, 254 Ala. 140, 157, 47 So.2d 455, 470. See also: Trailmobile, Inc. v. Connell, 268 Ala. 441, 108 So.2d 364, 367; Western Grain Company Cases, 264 Ala. 145, 176, 85 So.2d 395; Hendley v. First Nat. Bank of Huntsville, 235 Ala. 664, 666, 180 So. 667; Kinney v. Pollak, 225 Ala. 229, 231, 142 So. 390.

In view of the importance of and the wide public interest in this case, and in aid of bringing it to an early conclusion, we think it appropriate to place it on the rehearing docket for the limited purpose of discussing further what has been said about taking additional testimony on remandment. It is so ordered. (Note: The judgment was rendered on October 30, 1958, during the current term.)

As noted in the original opinion, § 52, Tit. 48, Code 1940, as amended, is the basic law prescribing the rates to which a utility is entitled. It is there provided that every utility shall be entitled to earn "a fair net return on the reasonable value of its property devoted to the public service." Significantly, it is further provided that, in determining what constitutes such a fair return, "the commission shall give due consideration, among other things, to the *requirements of the business* with respect to the utility under consideration, *and the necessity*, under honest, efficient and economical management of such utility, *of enlarging plants, facilities and equip-*

*ment of the utility* under consideration, in order to provide that portion of the public served thereby with adequate service." (Emphasis supplied.) This, it seems to us, clearly calls for consideration by the Commission, in determining a fair net return on the reasonable value of a utility's property, of the utility's future or projected needs in the respects indicated. The determination of such needs in the future more often than not will be based on estimates. If such estimates of needs in the respects indicated are entitled to consideration, then surely, it seems to us, actual experience during the period in which the rates are to be effective should be entitled to consideration. Actual experience would certainly furnish better evidence of the utility's needs than an uncertain estimate.

On original consideration the principal question discussed concerned the meaning of the phrase "reasonable value" of a utility's property devoted to the public service, as that phrase is used in § 52, Tit. 48, Code 1940, as amended. It will now be necessary for the Commission to determine, in further proceedings on remandment, the "reasonable value" of the Company's property, on which the Company will be entitled to earn a "fair net return"; such determination to be made in the light of what has already been said in the original opinion. During the more than five years since the Company's petition for increased rates was filed, and the original hearing thereon, it might well be that the Company has disposed of some of its property owned by it and devoted to the public service and also has acquired new property devoted to the public service. Thus, the problem is presented as to how and to what extent such changes in the Company's property ownership during such period should be considered in arriving at the "reasonable value" of the Company's property for rate-making purposes in the new hearing. Should the Commission consider the property owned and used by the Company in its business, and the reasonable value thereof, as of the time of filing the original petition for increased rates, and only such property and value, without regard to the actual property owned and used and the reasonable value thereof during such interim period? We think not.

If the proposed increased rates had never been put into effect the rates finally approved by the Commission would necessarily be fixed as of the date of final determination and become effective from and after that date and would not become effective as of the time of the original order of the Commission denying the increase in rates. But that is not the situation here. Since the increased rates have actually been in effect since June 19, 1954, any new rates, not in excess of those sought by the Company, necessarily must be effective from and after the date the increased rates went into effect under the supersedeas order issued by the circuit court. Only in this way will it be possible to determine what part, if any, of the increased rates during the interim period will have to be refunded to the Company's subscribers during such period.

One of the basic steps in the rate-making process is the determination of the reasonable value of the Company's property devoted to the public service when so devoted. Since the rates in this case necessarily must be as of the date the increased rates went into effect under the supersedeas order, the new rates will be prospective from that date. In other words, the rates to which the Company will be entitled will be projected in the future from and after June 19, 1954. The legislative purpose, as expressly stated in § 52, is to authorize a utility to "earn a fair net return *on the reasonable value of its property devoted to the public service.*" Section 52 further provides, as already noted, that the Commission shall, in making

**364**

such determination, "give due consideration, among other things, to the requirements of the business with respect to the utility under consideration, and the necessity, under honest, efficient and economical management of such utility, of enlarging plants, facilities and equipment of the utility under consideration." For instance, if a utility at the time of a hearing on its petition for increased rates shows that the requirements of its business, in order to provide the public served by it, call for the enlarging of its plants, facilities and equipment, evidence as to such requirements actually made or to be made would be entitled, under § 52, to due consideration by the Commission in determining the rates. If that be so, then surely, it seems to us, under the circumstances of this case where there has been a period of more than five years during which increased rates have been in effect, the actual requirements, as evidenced by what has actually occurred during the interim period, should be given due consideration in determining the rates.

■ It seems to us that it would be proper for the Commission, in finally determining the rates, to make them operative from and after June 19, 1954, and, if it be determined that an increase in rates is proper, to provide a different increase for certain stated periods during the time from that date until the final order is made. We say this because during one period there may be a proper basis for fixing rates different from those during another period due to a difference in factors which might bear on the rates from time to time. For instance, such factors might well vary sufficiently from time to time so as to justify a different rate for different periods of time.

Placed on rehearing by the Court and opinion extended. Rehearing is overruled.

All the Justices concur except COLEMAN, J., who dissents.