## Petition of Paul Letourneau et al. v. Citizens Utilities Company

[259 A.2d 21]

No. 4-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 7, 1969

*Chester S. Ketcham,* Middlebury, for the Public.

*Clifton G. Parker,* Morrisville, and *Shea, Gallop, Climenko & Gould,* New York, for Defendant.

**Shangraw, J.** This case is a rate proceeding which originally was heard on six days in October, November and December of 1963. The Public Service Board (hereafter called Board) filed its findings and final order on February 7, 1964, and certain amendments to the latter on March 4, 1964. Citizens Utilities Company (hereafter called Citizens) appealed to this Court which reversed the order of the Board and remanded the case for a hearing in accordance with the views expressed in its opinion. *Petition of Paul Letourneau et al.* v. *Citizens Utilities Company,* 125 Vt. 38, 209 A.2d 307 (April 6, 1965).

In its decision of February 7, 1964, the Board concluded that a 6.11 per cent rate of return for Citizens was reasonable and just. On this basis, the Board found that Citizens was entitled to a three per cent increase over its existing rates.

In the *Letourneau* case, *supra,* Citizens' appeal was directed to the exclusion of the Board of certain items submitted by Citizens as parts of the rate base. The utility also challenged the rate of return allowed by the commission.

This Court held in the above reported *Letourneau* case that the Board had erred in the following respects.

First, by adopting the figures of $95,000.00 as the net value of the so-called Prouty Rights acquired by Citizens in 1956 and so considered in the rate base by the Board. In this respect this Court observed that a later hearing would be required by the Board to properly determine the valuation of the Prouty Rights.

Second, in 1960 Citizens constructed a 115 KV-H frame transmission line from Highgate to Richford, Vermont, at a

cost of $529,715. The Board eliminated from this part of the rate base the sum of $239,097. We held that the Board was in error in excluding this latter figure from the rate base.

Third, the elimination by the Board of a major portion of the salary of the president of Citizens from its Mutual Service Account.

In consideration of the foregoing a new determination would necessarily follow with respect to the rate base and rate of return. The Findings Re Test Year, of the Board, dated December 20, 1968, reveal that on two days in January and March 1966, hearings were held on the valuation of the so-called Prouty Rights. This was followed by findings and an interlocutory order on February 3, 1967. The latter was supplemented on March 3, 1967.

On September 28, 1967, Citizens petitioned the Board for redetermination of the outstanding statements from the Board to Citizens for reimbursable expenses in this rate case. The hearing on the petition was held on three days in November 1967 and February 1968. The Board filed its findings and a second interlocutory order on September 16, 1968.

A second prehearing conference after remand was held on September 4, 1968. A preliminary question was raised concerning the appropriate test year to be used in further hearings. Counsel for Citizens urged that 1962, which was used as the test year in the original proceeding in 1963, be used again. Counsel for the Public urged that 1967, the latest year for which complete data was available at the time of the conference, be used as the test year.

By the Board's findings relating to test year the Board determined that an interlocutory decision as to the appropriate test year "will expedite disposition of the remaining issues in this rate case."

The Board's findings continued by stating:

> We are unable to find that use of the latest year for which complete data is available as the test year will unduly complicate disposition of this case. The two complex issues, determination of the rate base for the so-called Prouty Rights and determination of the rate base for the 115 KV-H frame line, already have been disposed of and are not affected by the choice of test year. Every

year from 1964 through 1968 will have to be considered in the final disposition, regardless of the choice of the test year, to ascertain if there will be any recoupment of revenues relating to those years.

We find that the test year to be used on remand in this case should be the latest year for which complete data is available. Our third interlocutory order will be on the appropriate test year and will incorporate permission for an interlocutory appeal.

Then followed the Board's Third Interlocutory Order bearing date December 20, 1968 which reads:

IT IS HEREBY ORDERED that the test year to be used on remand in this case shall be the latest year for which complete data is available.

Permission is hereby granted to Citizens Utilities Company to take an appeal to the Supreme Court of the State of Vermont for determination of questions of law arising from our decision of the appropriate test year.

Pursuant to the foregoing order authorized under the provisions of 30 V.S.A. section 12 which incorporates 12 V.S.A. section 2386 by reference, the following question of law was certified by the Public Service Board to this Court for review.

Did the Public Service Board err by ruling that the test year to be used on remand in this rate case shall be the latest year for which complete data is available rather than 1962?

Citizens has duly appealed to this Court. Our only concern in the present posture of this case is limited to the question certified.

The ultimate object in this case is for the Board to determine a proper rate of return to Citizens and at a fair cost of electric energy to the public. This involves a balancing of the investor and consumer interests. A rate of return may be reasonable at one time, and become too high or too low by changes affecting opportunity for investment, the money market, and business conditions generally. In every rate case, there is left a reasonable margin of fluctuation and uncertainty.

The fundamental considerations, including the foregoing, required in finding a fair return are set forth in *Bluefield*

*Water Works and Improvement Co.* v. *Public Service Commission,* 262 U.S. 679, at 692, 43 S.Ct. 675, 679, 67 L.Ed. 1176. The principles enunciated in the *Bluefield* case, *supra,* have been consistently confirmed and followed in Vermont. *Petition of New England Tel. & Tel. Co.,* 120 Vt. 181, 191, 136 A.2d 357; *Petition of Central Vermont Public Service Corp.,* 116 Vt. 206, 220, 216, 71 A.2d 576.

■ The judicial decisions on the subject of the appropriate test year in a utility rate case uniformly adhere to the rule that the test period should be based on the utility's most recent actual experience with such adjustments as will make the test period reflect typical conditions in the immediate future. *Petition of New England Tel. & Tel. Co., supra,* 183 citing *Petition of Central Vermont Public Service Corp., supra,* p. 211.

Rates are to be set for the future. To this effect, attention is called to two decisions of regulatory commissions on the subject of the appropriate test year. In *Washington Utilities and Transportation Commission* v. *Puget Sound Power and Light Co.,* CCH State Utilities Law Rptr., para. 19, 693.06 at p. 42,027, we find the following statement.

> In determining which of several proposed years is a proper test year, several factors must be considered by the Commission. A test year must first reasonably represent expected future operations. Actual operating results properly pro formed are in most cases preferable.

In the matter of *Application of the Potomac Electric Power Co.,* CCH State Utilities Law Rptr., par. 20, 368.01 at p. 43,927, (Dist. of Columbia PSC, June 10, 1966) it is stated that in the selection of a test period, "we deem it best to use actual figures for the latest available twelve-month period, adjusted to a normal level."

The initial rate hearings in this case were held in 1963. The thrust of appellant's claim is that 1962 should be used as the test year in that the figures were then available during the hearings before the Board. Citizens asserts that by adopting 1962 as the test period any adjustments in connection with recoupment for intervening years might reasonably be accomplished without the complicated, expensive and time consum-

ing procedure of an entirely new and full-fledged rate hearing. On the contrary, the Board, in its findings of December 20, 1968 determined that "We are unable to find that use of the latest year for which complete data is available as the test year will unduly complicate disposition of this case."

A precedent closely in point is *Re Southern Bell Tel. & Tel. Co.,* 31 P.U.R.3d 254 (Ala. PSC December 8, 1959). In that case a petition for a rate increase was filed on January 20, 1954. The increase was denied on April 21, 1954. This regulatory decision was reversed by the Supreme Court of Alabama on July 24, 1958. *Alabama Public Service Commission v. Southern Bell Tel. & Tel. Co.,* 268 Ala. 312, 106 S.2d 163, 26 P.U.R.3d 400.

Upon rehearing the Court issued a supplemental opinion on June 25, 1959 in which the Court expressly considered therein the use of the later test periods. *Alabama Public Service Commission v. Southern Bell Tel. & Tel. Co.,* 269 Ala. 361, 113 S.2d 503, 30 P.U.R.3d 83. Finally, the regulatory decision on remand considered four periods from 1954 through September 30, 1958 and it set rates for the future on the basis of the year ending September 30, 1958, the last date for which complete figures were available. 31 P.U.R.3d at 260–261.

In *New England Tel. & Tel. Co.* v. *State,* 104 N.H. 229, 240, 183 A.2d 237 the Court held that the Public Utilities Commission properly used actual operating results of the telephone company for a twelve months period ending six months before the Commission entered its order as test year by which to determine just and reasonable rates.

■■ The propriety or impropriety of a test year depends upon how well it accomplishes the objective of determining a fair rate of return in the future. It must reasonably represent expected future operations, and for this reason up-to-date data is preferable to out-of-date data. In determining rates which are prospective, the Board should consider the latest available relevant data. This appears to be the realistic approach to this issue.

Under the facts in this case, we cannot say that the selection of a test year by the Board, other than 1962, would be erroneous as a matter of law. The question certified is answered in the negative.

*The Third Interlocutory Order of the Public Service Board dated December 20, 1968 providing that the test year to be used in this case shall be the latest year for which complete data is available, rather than 1962, is affirmed. To be certified to the Public Service Board of Vermont.*