# In re New England Telephone and Telegraph Company

[382 A.2d 826]

No. 104-76

Present: **Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.**

Opinion Filed November 8, 1977

Motion for Reargument denied January 9, 1978

528

*John D. Carbine* and *Allan R. Keyes,* Rutland, for Petitioner.

*M. Jerome Diamond,* Attorney General, and *Mary J. Skinner,* Special Assistant Attorney General, Montpelier, for Respondent.

**Billings, J.** This is an appeal by the Attorney General from a Public Service Board order, dated March 24, 1976, which granted the New England Telephone and Telegraph Company (hereinafter N.E.T.) rate increases that N.E.T. had sought in two separately filed petitions. (P.S.B. ·Docket Nos. 3806 and 4033).

On January 21, 1974, N.E.T. petitioned for an increase in its intrastate rates of approximately 23% to become effective on February 20, 1974. (Docket No. 3806). The Board suspended those rates pursuant to 30 V.S.A. § 226(a); however, the utility began collecting the rates under bond on September 11, 1974, pursuant to a statutory procedure that permits the action pending determination of a rate increase petition. 30 V.S.A. § 227(a).

On June 24, 1975, N.E.T. filed a second separate application for an additional rate increase of approximately 17% (Docket

No. 4033). N.E.T. did not collect this additional rate increase under the statutory bonding provision.

On January 15, 1976, the Board issued a preliminary order in which it consolidated the two dockets, allowed updating based upon a test year of calendar year 1975, allowed recoupment in Docket No. 3806 from February 20, 1974 (30 V.S.A. § 226(b)), established an overall rate of return of 9.40%, reaffirmed the use of the separations manual as a method of allocating interstate and intrastate expenses,[1] adopted N.E.T.'s rate design with some modifications, and admitted into evidence N.E.T.'s class cost of service studies. The updating provision of the order required that all updated exhibits be filed by February 16, 1976, that rebuttal exhibits be filed by March 17, 1976, and that an "update" hearing be held on March 23, 1976.

On March 17, 1976, N.E.T. and the Board-appointed counsel for the Public filed a stipulation and agreement, which provided in relevant portions that N.E.T. was entitled to permanent rates the same as those then in effect under bond (those rates would produce $4.986 million in additional annual revenue) and was entitled to recoupment in the amount of $5.626 million ($3.639 million in Docket No. 3806 and $1.987 million in Docket No. 4033) to be recovered in twenty months through an 8.3% surcharge applied to *intrastate* services charged in the first three lines of a customer's monthly bill, *i.e.* basic monthly service, message units and long distance calls. The Attorney General and the other intervenors refused to join in the stipulation and agreement.

The "update" hearing commenced and, over the objections of the appellant and intervenors, the Board proceeded to consider the reasonableness of and the justification for the proposed rates and revenues set forth in the stipulation. The Board rejected the appellant's request for a continuance, and on March 24, 1976, it issued its final order which accepted the stipulation and agreement and implemented new rates and revenues

---

[1]The manual was accepted by the Federal Communications Commission in its proceeding for this purpose. *Re Intrastate and Interstate Operations of Telephone Companies*, 16 F.C.C.2d 317, 78 P.U.R.3d 479, 481 (1969); Part 67 F.C.C. Rules in Separations Procedures, 26 F.C.C.2d 248, 257 (1970).

according to its terms. This resulted in certain changes from its earlier preliminary order as follows: recoupment was allowed in Docket No. 4033; directory assistance charges were allowed without consideration of whether the number provided was listed in the directory; and a new coin telephone tariff was approved that increased the charge for "pay" telephones from ten cents to twenty cents.

Pursuant to V.R.A.P. 13(d), the Board has certified twelve questions for review.

The appellant's first claim is that the Board erred when it admitted the separations manual into evidence as the basis for allocating intrastate expenses. Essentially it contends that there was no evidence introduced to demonstrate its applicability to Vermont usage and experience and that no competent witness testified that the separations performed for purposes of this rate case were done in accordance with the manual or that their application produced a reasonable allocation of costs to Vermont intrastate operations. N.E.T. argues that the certified question is phrased in terms of admissibility and that therefore technically the appellant has not complied with the general rule that certified questions that are not briefed are waived. *In re Petitions of Burlington Electric Light Department*, 135 Vt. 114, 373 A.2d 514, 516 (1977), citing *In re Smith, Bell & Hauck Real Estate, Inc.*, 132 Vt. 295, 300, 318 A.2d 183 (1974). The appellee further asserts that the separations manual was clearly admissible on grounds of judicial notice or official notice. In response to the appellant's basic allegation, appellee replies that the evidence in the record supports the Board's findings on the appropriateness of the manual's use and further that the principles of federal pre-emption and comity control this issue and require use of the manual. See note 1, *supra.*

■ While the Board's first certified question asks whether the Board erred in admitting certain exhibits, we believe that it was intended to present questions about the separations manual as opposed to the narrow focus suggested by the appellee directed toward the admissibility of the exhibits under the rules

of evidence.[2] Thus the waiver rule is not applicable on these facts.

The appellant is incorrect in its allegation about a lack of evidence relative to the separations manual. One of N.E.T.'s witnesses testified that the separations were performed in accordance with the manual and further testified that the procedures, or formulae for separation represented by the manual, are fair.

■ We recognize that interstate operations are the problem of the Federal Communications Commission. However, the Board has jurisdiction over intrastate operations, *Petition of New England Tel. & Tel. Co.*, 115 Vt. 494, 503, 66 A.2d 135 (1949), and we hold that the F.C.C. has not pre-empted the issue of separations, since no irreconcilable difficulties have been created between regulation by the federal agency and a state agency, the Board. *In re Petition of Trustees of Westminster*, 108 Vt. 352, 356, 187 A. 519 (1936); *Re Frontier Airlines, Inc.*, 43 P.U.R.3d 158, 165 (Neb. St. Rwy. Comm. 1962); 47 U.S.C.A. § 151 et seq.; 30 V.S.A. ch. 5. It is the evidence presented, not the claimed principle of pre-emption, which defeats the first claim of error.

The appellant's second claim is that the Board erred in its findings relating to the intrastate rate base. Specifically, it objects to the treatment of four components: investment tax credits for plant in service, construction work in progress, property held for future use, and allowance for working capital.

■ (a) The Board's findings correctly state the general principle that the ratepayers should receive the benefit of investment tax credits. The central issue before the Board was whether those benefits should be applied immediately or be applied over the life of the asset for which the credit was given.

[2]The appellant apparently concedes "admissibility" in a footnote in its brief at page 25.

> Appellant submits that whether the Board took "judicial notice" or "official notice" of the Exhibits is irrelevant. Tr. 388 *et. seq.* for the Public waived the requirement of authentication of the Exhibits. The issue raised herein is denial of effective cross-examination in that no NET witness was available to testify *how* the calculations on separations sponsored by witness Troia were made. The Manual merely *outlines* a methodology; its *application* is at issue in this section.

In the case at bar, the Board chose the second method. *Rhode Island Consumers' Council* v. *Smith,*.113 R.I. 232, 243, 319 A.2d 643 (1974). This is a matter upon which the Board must exercise its discretion and business judgment. The findings and evidence are sufficient to support its conclusion, and thus its decision is well within the ambit of the exercise of sound and discretionary judgment. *In re Petitions of Burlington Electric Light Department*, 135 Vt. 114, 373 A.2d 514, 517 (1977).

■ (b) The appellant attacks the Board's allowance of construction work in progress in the rate base alleging that N.E.T. failed to relate any construction pending or planned to Vermont intrastate operations, that construction work in progress does not meet the "used and useful" test and thus is not properly a part of the rate base upon which ratepayers should pay a return, and that the Uniform System of Accounts requires capitalization of interest.

Our review of the record shows that the Board did receive evidence that construction work in progress represented plant in construction which was part of a continuing construction program and that the N.E.T. testimony on rate base was computed upon Vermont investment only. The next contention, that construction work in progress does not meet the "used and useful" test, is without merit because construction work in progress is in the nature of working capital whose "use" is imminent. Lastly, the Board ordered that the petitioner should capitalize no interest on construction work in progress and therefore should add no interest income to its revenues; its approach prevented a double return and was in accord with principles approved by this Court. *Petitions of New England Tel. & Tel. Co.*, 116 Vt. 480, 483-84, 80 A.2d 671 (1951); *Petition of New England Tel. & Tel. Co.*, 115 Vt. 494, 504-05, 66 A.2d 135 (1949).

■ (c) In regard to certain properties held for future use, the appellant contends that there was not sufficient evidence of a definite plan or imminent use, requirements of the Uniform System of Accounts and Vermont case law; that the Board's order lacks essential findings *vis a vis* this test; and that the Board erroneously double counted certain properties that had been transferred into plant accounts. N.E.T. responds that this

is a matter of business judgment for the Board since timing poses a question of fact and that its business plan in evidence supported the Board's findings.

In a recent electric utility rate case, we reaffirmed the standards by which we would test disputes concerning property held for future use. *In re Village of Stowe Electric Department*, 134 Vt. 559, 565-66, 367 A.2d 1056 (1976), citing *Petition of New England Tel. & Tel. Co.*, 115 Vt. 494, 505, 506, 66 A.2d 135 (1949). The essential components are: "whether the time for using the property in question is so near that it may properly be held to have the quality of working capital," and whether in the exercise of its business judgment the Board sets forth explanatory findings of fact that support its conclusions. *Id.* at 506. The Board did not make these necessary findings, and we cannot determine the questions presented until these findings are made. We remand for this purpose.

■ (d) Concerning working capital, appellant contends that the Board erred in failing to adjust N.E.T.'s working capital allowance to delete N.E.T.'s estimated maintenance material, average cash balance, and accrued interest components. In particular, as to the estimated maintenance materials and accrued interest components, appellant argues that its witness Madan presented uncontradicted credible testimony that the adjustments should be made. The Board found simply that "all of the adjustments suggested by witness Madan [are] unreasonable and not supported by credible evidence [and that it is] just and reasonable to authorize a working capital allowance of $547,000, after a credit for $190,000 of customer deposits."

Ordinarily, this Court will not interfere with the Board's informed judgment in making adjustments to working capital. *Hastings* v. *Village of Stowe*, 125 Vt. 227, 234, 214 A.2d 56 (1965). Also, the credibility of witnesses and the weight to be accorded to their testimony is for the Board. *Petition of Citizens Utilities Co.*, 117 Vt. 285, 287, 91 A.2d 687 (1952).

In the instant case, however, we must remand for further findings on this issue. The Board's finding quoted above is essentially a finding in the statutory language of 30 V.S.A. § 218 unaccompanied by any factual supporting statements as required by 3 V.S.A. § 812. We cannot determine the question

presented until these necessary findings are made. As a part of the findings it makes on this issue, the Board should take care to indicate the circumstances, if any, that discredit any *factual* testimony given by the witness Madan, if the Board adheres to its former position on that testimony, so as to take this case out of the rule of *Neill* v. *Ward*, 103 Vt. 117, 160, 153 A. 219 (1930), which held that when a credible witness distinctly and positively testifies to a fact and is not contradicted directly or circumstantially, the fact can be taken as established. Compare *Petition of Citizens Utilities Co., supra.*

The next claim of error concerns the admission of the testimony of three N.E.T. witnesses, Dr. Flaherty, Dr. Wippern and Mr. Hardenberg. These witnesses testified about cost of equity, cost of debt, capital structure and the use of company-wide cost of capital, and cost of service. Appellant has advanced various contentions with regard to each of these witnesses.

█ Appellant's contentions with regard to Dr. Flaherty and Dr. Wippern are easily dismissed. Appellant's objections to Dr. Flaherty's testimony are made only with regard to the admission of N.E.T.'s class cost of service exhibit and to the finding and approving by the Board of the rate design. Because the issue of the admission of Dr. Flaherty's testimony *per se* is not briefed, it is waived. *In re Petitions of Burlington Electric Light Department, supra,* 373 A.2d at 516. Concerning Dr. Wippern's testimony, appellant attacks its admission on the grounds of his failure to consider various facts. This alleged failure goes to the weight to be accorded to the testimony, not its admissibility. Appellant's arguments on weight should be made before the Board, not in this Court. See *Petition of Citizens Utilities Co.,* 117 Vt. 285, 287, 91 A.2d 687 (1952).

Regarding the admissibility of Mr. Hardenberg's testimony, appellant advances essentially three arguments. First, appellant claims error in the Board's qualification of the witness as an expert. Secondly, it is argued that the witness's opinion evidence has no factual basis in the record. Lastly, appellant questions admission of the testimony on the grounds that it relates to N.E.T.'s cost of doing business in New England as a whole, not just in Vermont.

 Mr. Hardenberg was accepted by the Board as an expert in financial matters. Appellant contests this acceptance with the sole argument here and before the Board that Mr. Hardenberg's baccalaureate degree is not in finance. In addition to education, a witness may become an expert in such ways as by experience and training. See Uniform Rule of Evidence 702. Here there was evidence that Mr. Hardenberg had worked with finance people in N.E.T. The competency of an expert witness is for the Board in its sound discretion and is not revisable on appeal unless it appears from the evidence or otherwise to be erroneous, which is not shown here. See *Alling Construction Co.* v. *Bissette*, 132 Vt. 331, 318 A.2d 666 (1974).

 As to the witness's testimony on N.E.T.'s cost of doing business in New England, we cannot say as a matter of law that such testimony is irrelevant and inadmissible in a rate case. The Board is not bound to the strict relevancy standards of a trial court when ruling whether to hear evidence. *Vermont Electric Power Co.* v. *Bandel*, 135 Vt. 141, 375 A.2d 975, 982 (1977).

Appellant's allegations that the witness's opinions were not based on facts properly in evidence raise more serious questions, especially in light of appellee's failure to brief this issue. "Opinions must be based on facts disclosed by the evidence in the case and not in whole or in part upon speculation of the witness as to what might have been such evidence." *Bliss* v. *Moore*, 112 Vt. 185, 190, 22 A.2d 315 (1941). Here the witness based a part of his testimony upon a hypothetical capital structure for N.E.T. Another part of his testimony was based on "observations" of the possibility of decreasing demand for utility services in some areas as well as the obsolescence of facilities. These observations were admittedly not grounded in any empirical data. We hesitate to find this testimony admissible within the rule of *Lambert* v. *Fuller*, 131 Vt. 181, 303 A.2d 471 (1973), which held that a witness can properly testify from his own knowledge through observation or investigation. *Id.* at 183-85. In *Lambert*, the witness was an accident reconstruction expert testifying on the basis of visual observations at the accident scene. This is far different from the "general observations" involved here.

 However, we need not reach the issue of the admissibility of the Hardenberg testimony. For appellant to succeed in

demonstrating reversible error, it must show both error in the admission of the testimony and that such error was prejudicial. *In re Village of Stowe Electric Department*, 134 Vt. 559, 562, 367 A.2d 1056 (1976). Whatever the merits of the former issue, appellant has failed to demonstrate the necessary prejudice as to the latter.

Appellant contends that without the admission of the Hardenberg testimony N.E.T. failed to meet its burden of producing evidence sufficient to justify the proposed rate increase. N.E.T. argues that any error was harmless and was corrected by later testimony on which the Board substantively relied. In this instance, the cumulative testimony came from a witness for the Public, a situation factually distinguishable from that in the *Stowe* case where the witness testified on behalf of the same party. *Id.* The appellant's argument is that if N.E.T. did not meet its burden of proof as to an essential portion of its case in chief, *e.g.*, rate of return, capital structure or cost of capital, through its own witness(es), it cannot benefit from duplicating or cumulative testimony of other parties on these same issues to avoid a motion to dismiss.

The appellant apparently concludes that the Board's adoption of the recommendations of the Public's witness on several issues buttresses its claim that the utility had not met its burden of proof through its own witnesses. We hasten to point out the difficult task with which the Board is faced. Utility rate cases do not proceed on a purely adversary model; they are basically a fact gathering proceeding, an investigation at which various parties often present alternative theoretical approaches to the analysis and evaluation of complex financial issues. As this case attests, the process is lengthy, complicated, and expensive.

 Certainly the appellant's argument that the petitioning party must present a prima facie case is correct; however, because of the nature of these proceedings we are prepared to agree with the appellee that *some* deficiencies in a petitioner's case may be supplied through the testimony of the other parties. Our discussion here should not suggest any shifting of the burdens of proof away from the petitioner. While the intervenors are not obligated to "make" the petitioner's case, they do stand in a posture whereby they assist the Board in achieving a result that presumably inures to the benefit of the

ratepayers as well as the utility, since they share a common interest: adequate service at reasonable rates resulting from an economically viable and efficiently managed enterprise. Persuasive testimony in this role may demonstrate that rate relief is unnecessary; however, if it substantiates the need for rate relief and in the process demonstrates deficiency in the case in chief, this later result should not cause dismissal of the case unless the deficiency is so egregious as to bring the credibility of the entire case into doubt. Moreover, utilities are constitutionally entitled to a rate scheme that provides a reasonable rate of return to their investors. *Mountain States Telephone and Telegraph Co.* v. *New Mexico State Corporation Commission,* 90 N.M. 325, 563 P.2d 588, 597-99 (1977). Thus, when the intervenors' testimony substantiates the need for rate relief, it is both in the public interest and constitutionally necessary that the Board order appropriate changes in the rate scheme. See *id.* Because appellant's witness verified N.E.T.'s right to rate relief, no prejudicial error is shown in the admission of the Hardenberg testimony.

We find no reversible error in the Board's admission of the testimony of Dr. Flaherty, Dr. Wippern and Mr. Hardenberg.

The appellant also claims that the Board erred when it ordered that the two pending petitions for rate increases be consolidated and that the appellee update all data for the test year adjusted for known and measurable changes based upon calendar year 1975 results. The Board ordered that exhibits and prefiled testimony be submitted in advance so that the intervenors (including the appellant) would have at least thirty days to review the materials prior to the "update" hearing scheduled for May 23, 1976. In addition, the appellant was invited to participate in preparing the updated data and to advise the Board by March 18, 1976, of any finding or provision of this January 15, 1976, preliminary order that it considered clearly erroneous. No party objected to the consolidation of the petitions.

The appellant's objections to the Board's updating order appear to be two: first, that the evidence submitted was speculative and conjectural and thus violated the known and measurable test; and secondly, that due process rights were trampled on, because thirty days did not permit adequate time to analyze and prepare a response to the new data, that entirely

new subject matters were included, *e.g.*, coin phone, and that the submissions unduly complicated the investigation in violation of the *Letourneau* rule. *(Letourneau* v. *Citizens Utilities Co.*, 128 Vt. 129, 134, 259 A.2d 21 (1969).)

■ The Board has the authority to exercise its judgment in matters of docket consolidation and updating. We have approved both in prior decisions of this Court. *In re Petitions of Burlington Electric Light Department*, 135 Vt. 114, 373 A.2d 514, 518 (1977); *In re Village of Stowe Electric Department*, 134 Vt. 559, 367 A.2d 1056 (1976); *Letourneau* v. *Citizens Utilities Co.*, 128 Vt. 129, 259 A.2d 21 (1969).

■ Of frequent dispute before this Court in rate case litigation are questions of the adequacy of notice and the opportunity to prepare and respond. We have stated a basic test that the "rudiments of fair play" must be observed and that the time frame must be realistic. *Petition of Green Mountain Power Corp.*, 131 Vt. 284, 293-94, 305 A.2d 571 (1973); *Petition of New England Tel. & Tel. Co.*, 120 Vt. 181, 188-89, 136 A.2d 357 (1957). We believe that thirty days was adequate notice and provided sufficient opportunity to prepare, without consideration of the additional period during which the appellant could have participated in meetings ordered by the Board concerning updating. In conjunction with this issue, we would reiterate our previous holding that intervenors are not obligated to prepare testimony in concert with a petitioning utility.

■ The Board did not, however, adhere to its original plan as outlined in the preliminary order of January 15th. If the Board had held the update hearing as described and scheduled rather than converting it into a hearing to justify the stipulation and agreement submitted by N.E.T. and counsel for the Public, no error would have appeared. Appellant was not afforded the hearing on updating as ordered, and the cause will have to be remanded for proper notice and hearing.

The next claim of error concerns the stipulation and agreement, and the request for a continuance when that document was presented at the March 23 hearing. Unless precluded by law, contested cases may be settled by stipulation

and agreement. 3 V.S.A. § 809(d). This statute applies to cases before the Board. 3 V.S.A. § 801. However, a rate case is distinguishable from other contested cases within the Board's jurisdiction particularly since ratemaking is a legislative function delegated to the Board. *Petition of Central Vermont Public Service Corp.*, 116 Vt. 206, 209, 71 A.2d 576 (1950).

The Board is specifically charged by Vermont law with jurisdiction to assure adequate utility service at just and reasonable rates. 30 V.S.A. §§ 218-219. To fulfill this legal obligation, the Board undertakes investigations of the rates and charges of regulated utilities. In conformity with the principle of due process, Vermont law requires an opportunity for hearing after reasonable notice. 3 V.S.A. § 809. At a rate hearing, evidence is presented for the Board's consideration and, to facilitate a thorough exploration of the interests and issues involved, the Board appoints counsel to represent the Public. 30 V.S.A. § 20. Public counsel engages various experts to study the rate increase petition ·and to present their independent findings and recommendations before the Board.

█ Counsel for the Public must possess reasonable latitude to exercise independent judgment in the preparation and presentation of the Public's case. After investigation, counsel may proceed by offering direct testimony in rebuttal or by cross-examination, but even if counsel were to find substantive components of the petitioner's case reasonable and supported by the evidence, counsel cannot concur by way of stipulation and agreement to those substantive issues. Counsel for the Public lacks this authority because from the very nature of the client it is impossible to obtain the authority to enter such stipulations and agreements. Counsel's authority in this regard extends only to procedural matters.

We hold that it was error for Public's counsel to enter into this stipulation and agreement with the petitioner. The Board should not have accepted it.

The appellant alleges error by the Board in its allowance of recoupment. It argues that the Board failed to make essential findings relating to economic changes and that unlike the *Stowe* and *Burlington* cases there is not adequate evidence on the record to substantiate changes; that the recoupment granted was unreasonable and unjustly discriminatory because certain

classes of customers (private line, mobile, large pbx, centrex) were not surcharged; that recoupment in Docket No. 4033 is impermissible because there was no regulatory lag associated with that petition; and that the updated "rates for the future" were used in the recoupment calculation and the updated rates already took into account future revenue needs.

The appellee replies that 30 V.S.A. § 226(b) presents only two pre-conditions: that the rates petitioned for were suspended and not put into effect and that the rates finally determined were in excess of the rates in force at the time the proposed rates were filed. Therefore, N.E.T. was entitled to recoupment as a matter of law, and the only unresolved question was factual -- how much recoupment would be allowed.

■ 30 V.S.A. § 226(b) concludes with the phrase, "in view of economic changes which may have occurred since the filing." The statutory scheme basically mandates that recoupment be granted if the Board finds the requested rate increase justified. However, economic circumstances might occur, particularly given the use of an historical test year, that would not support full or partial recovery of those rates for the regulatory lag period. In short, there must be evidence in the record or the Board must find that there were no economic changes of a sort which would support only partial or no recoupment. This is the essence of the *Stowe* and *Burlington* cases. In both those cases, the requisite showing was made by affirmative evidence that costs continued to rise after the filing of the petitions. This case lacks these findings and lacks evidence of economic changes in light of our conclusion above concerning the so-called update hearing.

■ The appellant vaguely argues that there was no regulatory lag in Docket No. 4033, because the Board never commenced a *separate* investigation of that docket. The appellant misunderstands the plain meaning of regulatory lag. If a petition is filed and the rates do not go into effect within thirty days because of suspension by the Board regulatory lag occurs. Thus, if the Board had properly held the update hearing and properly found that increased rates were justified in the consolidated docket and that the requirements for recoupment were met, the Board would have acted correctly when it identified recoupment in each docket as part of its final order.

Confusion was created when the Board reversed that portion of its preliminary order of January 15th that denied recoupment in Docket No. 4033. Presumably, it permitted recoupment in Docket No. 4033 because of the stipulation and agreement. Because of our conclusions above, the Board will have to reconsider recoupment in both dockets on remand.

Further, the preliminary order of January 15th ordered recoupment based on the cost of service. That order did not change the rate design. It is not clear from the record whether the preliminary and final orders exempted private line, mobile, large pbx, and centrex from any recoupment, there being no evidence whether the charges for these specialized services are included in the first three lines of the customers' bills. These services cannot be exempted from recoupment otherwise it would be unjustly discriminatory.

The next alleged error claimed by appellant contests the Board's admission of N.E.T.'s class cost of service exhibits, which were prepared by N.E.T.'s witness Dr. Flaherty. Appellant argues that the exhibits were inadmissible, because they failed to conform to a prior Board order and because they did not justify N.E.T.'s proposed rate structure.

We fail to see any merit in either contention. The type of evidence admitted by the Board is generally within its province. *In re New England Tel. and Tel. Co.*, 131 Vt. 470, 307 A.2d 783 (1973). This Court will not invade that province unless the admitted evidence is shown to be either not competent or highly irrelevant. See *Vermont Electric Power Co.* v. *Bandel*, 135 Vt. 141, 375 A.2d 975, 982 (1977).

Appellant's second argument asks us to function as an appellate Public Service Board. The cost of service studies need not justify the proposed rate structure to be both competent and relevant. The Board found these exhibits to be an appropriate first step in determining rate structure. This finding is not challenged and is sufficient to justify the admission of the exhibits in the Board's discretion.

Appellant has made various claims relating to the rate design adopted by the Board, questioning the sufficiency of the evidence to support the rate design and alleging that the rate design was unjust, unreasonable, and unjustly discriminatory between the various classes of service.

The rate design adopted by the Board was that proposed in the stipulation and agreement submitted by N.E.T. and the Public. In adopting the rate design, the Board found simply that the proposed rate design was "just and reasonable."

██ As in its findings concerning working capital, the Board's finding as to rate design is in the statutory language of 30 V.S.A. § 218 unaccompanied by any factual supporting statements as required by 3 V.S.A. § 812. The rate design must be supported by either substantial evidence in the record, or matters officially noticed by the Board, or both. *Petition of Green Mountain Power Corp.*, 131 Vt. 284, 303-04, 305 A.2d 571 (1973); *Petition of Citizens Utilities Co.*, 117 Vt. 285, 287, 91 A.2d 687 (1952). The Board in its order must disclose the facts underlying its decision to adopt a particular rate design. See *Petition of New England Tel. and Tel. Co.*, 120 Vt. 181, 136 A.2d 357 (1957).

We held above that the Public may not stipulate on substantive issues, and this includes rate design. Thus, the Board's order relating to rate design is defective for this reason. In addition, we hold here that the Board must make findings to support the rate design that it orders based on evidence properly before it. Because of these defects, we cannot render any decision on the merits of appellant's arguments.

*The order of the Public Service Board is affirmed except as follows: (1) the cause is remanded for proper findings regarding inclusion in the rate base of property held for future use and working capital and for proper findings regarding rate design and recoupment; (2) the cause is remanded for hearings on updating and as to those matters for which no prior hearing has been held. Let the result be certified.*

## ON MOTION FOR REARGUMENT.

**Per Curiam.** Subsequent to the handing down of the opinion, appellee, by motion for reargument, called to our attention a statement relative to recoupment which was not clearly demonstrated in the record. The opinion was recalled and amended.

Other than the foregoing, the motion presented contained no other matters. The revision does not change the result and the entry is not affected. No ground for reargument appears, and the motion is denied. See *State* v. *O'Connell*, 135 Vt. 182, 375 A.2d 982, 984 (1977).