KENTUCKY AMERICAN WATER
COMPANY, Appellant,

v.

COMMONWEALTH of Kentucky, ex rel.
Frederic J. COWAN, Attorney
General, et al., Appellees.

and

KENTUCKY PUBLIC SERVICE
COMMISSION, Appellant,

v.

COMMONWEALTH of Kentucky, ex rel.
Frederic J. COWAN, Attorney
General, et al., Appellees.

Nos. 91–SC–1022–DG, 91–SC–1023–DG.

Supreme Court of Kentucky.

Feb. 18, 1993.

Lindsey W. Ingram, Jr., Lizbeth Ann Tully, Stoll, Keenon & Park, Lexington, for appellant/Kentucky–American Water Co.

Chris Gorman, Atty. Gen., William E. Doyle, Paul E. Reilender, Jr., Asst. Attys. Gen., Frankfort, for appellee/Commonwealth of Kentucky, ex rel. Frederic J. Cowan, Attorney General, et al.

Edward W. Gardner, Director of Litigation, Dept. of Law, Lexington, for appellee/Lexington–Fayette Urban County Government.

Susan Mastin Scott, Rebecca Woodside Goodman, Lori H. Flanery, Frankfort, for appellee/Kentucky Public Service Commission.

### OPINION OF THE COURT

The issue we decide on this appeal is whether a "contested settlement" negotiated by a rate-setting agency's staff, with less than all of the parties, should afford an evidentiary basis for, or be entitled to consideration by, the commission in its final decision.

Kentucky–American Water Company sought approval from the Kentucky Public Service Commission to increase Kentucky–American Water Company's annual reve-

nues. The Commonwealth, acting through the Attorney General, and Lexington–Fayette Urban County Government intervened in the proceeding and challenged the requested rate increase. The Public Service Commission staff conducted direct negotiations with Kentucky–American Water Company, the result of which was a proposed or contested settlement agreement. Subsequently, a hearing was conducted by the Public Service Commission concerning the reasonableness of the proposed settlement. Prior to the hearing the Public Service Commission ruled that because its staff was not a party in the action, the staff would not be subject to discovery or cross-examination by the Commonwealth or Lexington–Fayette Urban County Government at the hearing. Approximately one month after the hearing the Public Service Commission entered an order adopting the proposed settlement.

The Commonwealth and Lexington–Fayette Urban County Government appealed the Commission's decision. The Franklin Circuit Court found that the agreement between Kentucky–American Water Company and the Public Service Commission was not a settlement and that the Commission should have held a full blown hearing. The Franklin Circuit Court also determined that the Public Service Commission's staff was subject to discovery and cross-examination.

Appellants appealed the Franklin Circuit Court's decision to the Court of Appeals. The Court of Appeals adopted the lower court's opinion as its own.

After careful consideration of all the issues, we affirm the decision of the Court of Appeals. We are of the opinion that the trial court clearly set forth and correctly decided the legal and factual issues presented in this case. We hereby adopt, in its entirety, the opinion of Franklin Circuit Judge Ray Corns.

"This case is an appeal by the Plaintiffs Attorney General of the Commonwealth of Kentucky (AG) and the Lexington–Fayette Urban County Government (City) from Defendant Public Service Commission's (Commission) ORDER increasing the rates of

Defendant Kentucky–American Water Company (KAWC).

"KAWC filed an application with the Commission on December 1, 1987, seeking permission to raise its rates by one million seven hundred thirty-two thousand eight hundred thirty-six dollars ($1,732,836) on an annual basis. The AG and the City intervened in the proceeding and were active participants in all phases of the action. The AG and the City filed testimony seeking a decrease in KAWC's requested rates.

"At the request of KAWC, the Commission's Staff (Staff) arranged a settlement conference attended by all parties on March 30, 1988. At the conference, the Staff advised the parties that its role was to monitor the discussion of the parties; to assist the parties to reach agreement on particular issues, if possible; and to become informed as to the basis of any settlement rendered by the parties sufficiently to advise the Commission.

"Tentative agreement on some, but not all, issues was reached by the parties; but, prior to negotiation on many issues by the parties, the Staff began direct negotiation with KAWC. Over the objections of the AG and the City, the Staff and KAWC concluded an agreement for a 'bottom-line' rate increase.

"On April 25, 1988, a document styled 'Proposed Settlement' was executed by the Staff and KAWC memorializing the agreement concluded in the settlement negotiations and recommending that the Commission increase KAWC's rates by eight hundred forty-two thousand six hundred ten dollars ($842,610). At no time did either the AG and the City concur in any respect with the agreement concluded between the Staff and KAWC.

"On May 5, 1988, a hearing was conducted before the Commission for the purpose of receiving evidence from the AG and the City concerning the reasonableness of the Proposed Settlement. Neither the Staff nor KAWC was ordered to adduce any proof of the reasonableness of their agreement.

"Prior to receiving evidence at this hearing, the Commission ruled, in response to the AG's Motions, that its Staff was not a party in the action; and would, therefore, not be subject to Discovery and Cross–Examination by the AG and the City at the hearing. On June 3, 1988, the Commission entered an ORDER adopting the Settlement Agreement negotiated between its Staff and KAWC and increasing the latter's rates by eight hundred forty-two thousand six hundred ten dollars ($842,-610).

"The AG and the City now file this appeal pursuant to KRS 278.410 to request this Court to vacate the ORDER of the Commission; and remand the case for a hearing on the reasonableness of the utility's proposed rate increase with instructions to disregard the Proposed Settlement of KAWC and the Staff.

"The AG argues on appeal essentially the same contentions that he brought out during the hearing, to wit:

(1) That the Commission acted outside its authority in negotiating and signing a Proposed Settlement over the objections of all participating parties other than the applicant utility.

(2) That the Commission denied the AG due process of law by accepting the Proposed Settlement without subjecting its Staff, who joined and recommended the proposal, to Discovery and Cross–Examination.

(3) That the Commission violated KRS 278.190(3) and due process considerations by shifting the burden of proving the unreasonableness of the Proposed Settlement to the AG.

(4) That the rates offered in the Proposed Settlement and adopted in the Commission's ORDER were unfair, unjust, and unreasonable rates.

■ "The procedures and limitations of judicial review of ORDERS of the Commission are set out in KRS 278.410 through 278.450. In a public utility regulatory matter, the complaining party must show by clear and convincing proof that the determination of the agency was unlawful or unreasonable. KRS 278.430.

"The first claim of error concerns the Proposed Settlement that was presented at the May 5 hearing. The AG asserts that members of the Commission Staff are not parties to a Public Service Case; and, thus, are not empowered to enter into settlement agreements. The AG cites PSC ORDER No. 6748 *In Re Notice of Green River Electric Corporation*, August 9, 1977, which states:

[T]he Commission emphasizes that the members of its Staff are not parties to a given proceeding before the PSC. Their function is to provide expert advice and technical data to the Commission on the various issues presented in each such quasi-judicial proceeding.... [I]n order to properly perform this critical advisory role, the Commission Staff must be entirely independent of outside influence or pressure.

"From this case it appears that the Staff should not be parties. However, 807 KAR 5:001 § 4(4) states:

In order to provide opportunity for settlement of a proceeding or any of the issues therein, an informal conference with the commission staff may be arranged through the secretary of the commission either prior to, or during the course of hearings in any proceeding, at the request of any party.

"This regulation seems to imply that the Staff is a party in that they can settle at an informal conference. The other regulation relevant to this issue is 807 KAR 5:001 § 4(6) which states:

By a stipulation in writing, filed with the secretary, the *parties* to any proceeding or investigation by the commission may agree upon the facts or any portion of the facts involved in the controversy, which stipulation shall be regarded and used as evidence at the hearing (Emphasis added).

"Except as provided in these regulations, the Commission Rules of Procedure does not spell out what manner or by what procedure the Commission is to consider and act on the matter submitted; nor does it expressly require—or dispense with—the unanimous consent of all participating parties in a multiparty proceeding.

■ "In Kentucky, the task of the Staff is to conduct investigations to facilitate a thorough exploration of the interests and issues involved. KRS 278.110. The traditional role of the Staff is 'generally to analyze the evidence and advise the Commission.' PSC Case No. 9631, *Kentucky Utilities Company* (Chairman Herman dissent). Since there are no reported cases addressing the authority of the Staff to enter into a contested settlement, both parties have cited precedent outside this jurisdiction with substantially similarly facts.

"The AG relies on *In Re New England Telephone and Telegraph Company*, Vt. [135 Vt. 527], 382 A.2d 826 (1977), in which the Vermont Supreme Court remanded a case to the Commission and held that the Staff Counsel had no authority to enter into settlements regarding substantive rate issues. The Court reasoned that the '[staff] lacks this authority because from the very nature of the client it is impossible to obtain the authority to enter such stipulations and agreements.' *Id.* [382 A.2d] at 836.

"KAWC cites *City of Akron v. Public Utilities Commission*, Ohio [55 Ohio St.2d 155], 378 N.E.2d 480 (1978), in which the Ohio Supreme Court approved the procedure of allowing the Staff to enter into stipulations. The Court stated the following rationale:

The commission, of course, is not bound to the terms of any stipulation; however, such terms are properly accorded substantial weight. Likewise, the commission is not bound by these findings of its staff. Nevertheless, those findings are the result of detailed investigations and are entitled to careful consideration. *City of Akron* [378 N.E.2d] at 483.

"The Court also noted that the record showed that the Commission afforded the intervening parties full opportunity to present evidence with respect to all contested issues.

■ "It is evident in this case that the Commission was not bound by the 'Pro-

posed Settlement'; and that the AG and the City had full opportunity to present evidence. However, in our considered opinion, the Staff is not a party in this case; but that 807 KAR 5:001 § 4(4) does not preclude the Commission from directing its Staff to fully participate in the settlement conferences, along with the applicant and other intervenors. Additionally, common sense dictates that there can be no stipulation, or settlement, without consent of all the parties. Here there was not total agreement—the AG and the City did not stipulate to the Proposed Settlement. Thus, the agreement between KAWC and the Staff was not a settlement, as all parties had not agreed to it. Consequently, the Proposed Settlement should not have been offered by the Staff to the Commission as a settlement; and the Commission should have held a full scale hearing instead of one merely to consider the reasonableness of the Proposed Settlement.

■ "The Commission argues that to hold a full and formal evidentiary hearing despite the Proposed Settlement would render the settlement procedure meaningless. This contention, is flawed, in that, every day in judicial cases there are countless settlement conferences held which do not end in agreement. However, this has not resulted in the rendering of the settlement process meaningless. A majority of judicial cases are settled. Moreover, if the Commission had accepted the AG's position regarding the unreasonableness of the Proposed Settlement, then the Commission would have had to schedule another hearing to establish reasonable rates. Thus, litigating contested Proposed Settlements may actually increase the amount of hearing time.

■ "The AG also claims that the Commission erred by not allowing the Staff to be subjected to Discovery and Cross-Examination; and thus, violated due process. Under due process, the AG and the City were entitled to know what evidence is being considered and are entitled to an opportunity to test, explain and/or refute that evidence. *Utility Regulatory Commission v. Kentucky Water Service, Inc.,* Ky.App., 642 S.W.2d 591 (1982); *Ohio Bell Telephone Company v. Public Utility Commission of Ohio,* 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937). The AG participated in the settlement conference and the hearing. The AG was given the opportunity to Cross-Examine KAWC witnesses, but not Staff witnesses. In this case, the Staff acted in an adverse manner by negotiating, signing, and publicly recommending a compromise of the case which did not include the AG and the City. In view of this, the AG and the City were entitled to know the factual material on which the Staff relied so that this evidence might be refuted. Thus, the AG should not have been prevented from taking Discovery or Cross-Examining the Staff members who recommended the settlement.

■ "The third issue raised by the AG is that the settlement procedure in effect shifted the burden of proof to the intervenors; and that it became their burden to prove that the Proposed Settlement signed by the Staff and KAWC was unreasonable. KRS 278.190(3) clearly places the burden of proof of showing that an increase of rate or charge is just and reasonable upon the applicant utility. After careful review of the record, we do not find any indication that any impermissible shift of the burden of proof occurred. KAWC filed prepared testimony and presented witnesses at the hearing. Therefore, at all times in this case KAWC had the burden of proof to show that the rates contained in its application were just and reasonable.

"The fourth and final issue raised by the AG is whether or not the rates of KAWC established by approval of the Proposed Settlement were fair, just, and reasonable. Since the procedure utilized by the Commission violated due process, we do not need to address this issue.

"This Court, for all the foregoing reasons, is of the opinion that the procedure used by the Commission violated due process of law, and did not shift the burden of proof away from KAWC."

For the foregoing reasons, the decision of the Court of Appeals is affirmed.

STEPHENS, C.J., and COMBS, LEIBSON, REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

LAMBERT, J., dissents in a separate dissenting opinion.

LAMBERT, Justice, dissenting.

I concur in the majority's holding that the Commission Staff was not a party in these proceedings, and that there was no impermissible shifting of the burden of proof. However, I disagree with the majority's characterization of the hearing as "one conducted merely to consider the reasonableness of the Proposed Settlement." It is my firm belief that the Commission conducted a full due process hearing as to all contested issues in the case.

Prior to the hearing, the Commission Staff arranged and participated in a settlement conference between the relevant parties. At this conference the Staff assisted the parties in reaching tentative agreements on several of the issues, but not on a "bottom-line" rate increase. Through negotiation, the Staff persuaded Kentucky American Water Company (KAWC) to lower the amount of its requested rate increase from $1,732,386 to $842,610, approximately a 50% reduction. However, the Attorney General (AG) and the Lexington–Fayette Urban County Government (LFUCG) disagreed with any rate increase and refused to enter into the Proposed Settlement Agreement. The parties were dead-locked on the issue, and a hearing was scheduled to determine whether KAWC's request for a rate increase, and not the Proposed Settlement, was "fair, just, and reasonable."

At the hearing, KAWC presented evidence sufficient to establish that a rate increase of $842,610 was appropriate under the law. The AG and LFUCG presented testimony to the Commission in opposition to the requested rate increase and were afforded the opportunity to cross-examine all witnesses. Due process requires nothing further.

I also disagree with that portion of the majority opinion which holds that due process subjects Commission Staff to discovery and examination by the parties. While due process entitles a party to know what evidence is being considered and an opportunity to test it by cross-examination, explain or refute that evidence, I discover no denial of due process in the procedures employed here.

KAWC and its witnesses were subject to all of the discovery provisions provided by law. This furnished a complete opportunity for the AG and LFUCG to inform themselves of the evidence which would likely be presented at the hearing. In addition, they were granted, and fully exercised, the opportunity to "test, explain and/or refute" KAWC's evidence at the hearing. Although the majority correctly states that AG was not given an opportunity to cross-examine the Staff witnesses, it should be noted that no Staff witnesses testified at the hearing, nor did the Staff produce any evidence.

Furthermore, the record in this case does not show that "the staff acted in an adverse manner by negotiating, signing, and publicly recommending a compromise of the case which did not include the AG and the City." To the contrary, it reflects that the Staff acted in strict accordance with its stated role, as expressed on pp. 3–4 of the majority opinion. The Proposed Settlement about which so much fuss is made was nothing more than a Staff recommendation to the Commission, and as the majority concedes, had no binding effect on the Commission.

As I can deduce no violation of due process from the record in this case, I see this as a triumph of form over substance. The majority has been misled by the appearance of a "Proposed Settlement" and failed to inquire sufficiently into the substance of the case. As described herein, the hearing which occurred before the full Commission was adversarial, informed by virtue of discovery, and without any due process violation. I would reverse the Court of Appeals and reinstate the decision of the Public Service Commission.