LOUISVILLE GAS AND ELECTRIC COMPANY, Appellant,

v.

COMMONWEALTH of Kentucky, ex rel., Frederic J. COWAN, Attorney General; Jefferson County, Kentucky, ex rel., Michael E. Conliffe; Metro Human Needs Alliance, Inc.; Fairdale Area Community Ministries, Inc.; West Louisville Community Ministries, Inc.; Sister Visitor Center; Darlene Baker; Jacqueline Petty; and Public Service Commission, Appellees,

and

PUBLIC SERVICE COMMISSION OF KENTUCKY, Appellant,

v.

COMMONWEALTH of Kentucky, ex rel., Frederic J. COWAN, Attorney General; Jefferson County, Kentucky, ex rel., Michael E. Conliffe; Metro Human Needs Alliance, Inc.; Fairdale Area Community Ministries, Inc.; West Louisville Community Ministries, Inc.; Sister Visitor Center; Darlene Baker; Jacqueline Petty; and Louisville Gas and Electric, Appellees,

and

LOUISVILLE GAS AND ELECTRIC COMPANY, Appellant,

v.

COMMONWEALTH of Kentucky, ex rel., Frederic J. COWAN, Attorney General; Jefferson County, Kentucky, ex rel., Michael E. Conliffe; Metro Human Needs Alliance, Inc.; Fairdale Area Community Ministries, Inc.; West Louisville Community Ministries, Inc.; Sister Visitor Center; Darlene Baker; Jacqueline Petty; and Public Service Commission of Kentucky, Appellees,

and

COMMONWEALTH of Kentucky, ex rel., Frederic J. COWAN, Attorney General; Jefferson County, Kentucky, ex rel., Michael E. Conliffe; Metro Human Needs Alliance, Inc.; Fairdale Area Community Ministries, Inc.; West Louisville

Community Ministries, Inc.; Sister Visitor Center; Darlene Baker; and Jacqueline Petty, Cross–Appellants,

v.

LOUISVILLE GAS AND ELECTRIC COMPANY, Cross–Appellee,

and

PUBLIC SERVICE COMMISSION OF KENTUCKY, Appellant,

v.

COMMONWEALTH of Kentucky, ex rel., Frederic J. COWAN, Attorney General; Jefferson County, Kentucky, ex rel., Michael E. Conliffe; Metro Human Needs Alliance, Inc.; Fairdale Area Community Ministries, Inc.; West Louisville Community Ministries, Inc.; Sister Visitor Center; Darlene Baker; Jacqueline Petty; and Louisville Gas and Electric, Appellees,

and

COMMONWEALTH of Kentucky, ex rel., Frederic J. COWAN, Attorney General; Jefferson County, Kentucky, ex rel., Michael E. Conliffe; Metro Human Needs Alliance, Inc.; Fairdale Area Community Ministries, Inc.; West Louisville Community Ministries, Inc.; Sister Visitor Center; Darlene Baker; and Jacqueline Petty, Cross–Appellants,

v.

PUBLIC SERVICE COMMISSION, Cross–Appellee.

and

LOUISVILLE GAS AND ELECTRIC COMPANY, Appellant,

v.

COMMONWEALTH of Kentucky, ex rel., Frederic J. COWAN, Attorney General; Jefferson County, Kentucky, ex rel., Michael E. Conliffe; Metro Human Needs Alliance, Inc.; Fairdale Area Community Ministries, Inc.; West Louisville Community Ministries, Inc.; Sister Visitor Center; Darlene Baker; Jacqueline Petty; and Public Service Commission, Appellees.

Nos. 91–CA–002200–MR, 91–CA–002389–MR, 91–CA–002643–MR, 91–CA–002958–MR, 91–CA–002670–MR, 91–CA–002959–MR.

Court of Appeals of Kentucky.

April 23, 1993.

Discretionary Review Denied by Supreme Court Oct. 20, 1993.

Chris Gorman, Atty. Gen., Paul E. Reilender, Jr., Asst. Atty. Gen., Utility and Rate Intervention Div., Frankfort, for Commonwealth of Kentucky, ex rel., Atty. Gen.

Michael E. Conliffe, Jefferson County Atty., J. Bruce Miller, Jr., Miller, Mosley, Clare & Townes, Louisville, for Jefferson County, Kentucky, ex rel., Jefferson County Atty.

Susan Mastin Scott, Rebecca Woodside Goodman, John David Myles, Frankfort, for Public Service Com'n.

Frank P. Doheny, Jr., Peter N. Tassie, Elizabeth Mendel, Woodward, Hobson & Fulton, Louisville, James Park, Jr., Katherine Randall, Brown, Todd & Heyburn, Lexington, for Louisville Gas & Elec. Co.

Candy Culin, Kathleen M. Guinane, Legal Aid Soc., Louisville, Anthony G. Martin, Office of Kentucky Legal Services Program,

Lexington, for Metro Human Needs Alliance, Inc.; Fairdale Area Community Ministries, Inc.; West Louisville Community Ministries, Inc.; Sister Visitor Center; Darlene Baker; and Jacqueline Petty.

Before EMBERTON, HOWERTON and STUMBO, JJ.

STUMBO, Judge:

These appeals arise from an investigation initiated by the Public Service Commission (hereinafter "PSC") into Louisville Gas and Electric Company's (hereinafter "LG & E") Trimble County power plant. After settlement negotiations between the Utility and Rate Intervention Division of the Attorney General of Kentucky, Jefferson County, and the residential intervenors (hereinafter "Intervenors" collectively) and the PSC's staff, and LG & E, broke down, the PSC's staff and LG & E reached a settlement. Thereafter, the PSC held a hearing on the reasonableness of the proposed nonunanimous settlement. The PSC concluded that the settlement was reasonable, and entered an order approving it. The Intervenors appealed to the Franklin Circuit Court, which vacated the PSC's decision since the PSC's staff's participation was improper, and directed the PSC to implement certain refunds to LG & E's customers. All parties were in some measure dissatisfied with the circuit court's decision, and consequently filed several appeals and cross-appeals. We have reviewed the record and the law, and we must affirm the decision to vacate the PSC's order, but must reverse the circuit court's directions to the PSC.

The long history of this case begins in 1978 when the Trimble County plant was originally authorized. Since that time, the plant has been the subject of numerous cases before the PSC. The decision of the PSC at issue herein concerns the disallowance of 25% of the Trimble County plant from LG & E's rate base.

 Fortunately, we need not delve into the arcane depths of ratemaking to analyze these appeals. The real issue boils down to whether the nonunanimous settlement as to the methodology to handle the 25% disallow-

ance between LG & E and the PSC's staff, which was approved by the PSC, is proper. As a result, we do not need to set forth the facts in any greater detail.

The question of the validity of nonunanimous settlements is not a new one. During the interval between oral argument in this case and preparation of this opinion, our Supreme Court rendered *Kentucky American Water Co. v. Commonwealth of Kentucky, ex rel, Frederic J. Cowan, Attorney General,* 847 S.W.2d 737 (Ky.1993), which resolved this issue. Therein, the Court held that it was error for the PSC to accept a less than unanimous settlement. Thus, a full-blown hearing was ordered on all issues. We must do the same.

 Although not strictly necessary to our decision, we are compelled to comment upon the *ex parte* contacts between LG & E and the PSC. We note the rule in Kentucky is that such *ex parte* contacts make administrative agencies' decisions voidable, not void *per se. National–Southwire Aluminum Company v. Big Rivers Electric Corporation,* Ky.App., 785 S.W.2d 503, 515 (1990); *see also Professional Air Traffic Controllers Organization v. Federal Labor Relations Authority,* 685 F.2d 547, 564 (D.C.Cir.1982) (hereinafter "PATCO"). Thus, an *ex parte* contact is condemnable, when it is relevant to the merits of the proceeding between an interested person and an agency decisionmaker. *See PATCO,* 685 F.2d, at 561–2. Since the contact must relate to the merits of the proceeding, legitimate procedural and status inquiries are not subject to sanction. However, even such seemingly innocuous inquiries can be subtle or indirect attempts to influence the substantive outcome. Consequently, if the case is doubtful, the contact should be treated as one for possible sanction. An interested person must also be broadly defined to include anyone with an interest greater than that of the general public, since persons other than parties can have an interest in or be affected by administrative decisions. *See PATCO,* 685 F.2d, at 562–3. Likewise, we think an agency decisionmaker must be broadly defined, since more than just the named members of the PSC, or other administrative agencies, have signifi-

cant impact on the decision-making process. An analysis of whether a person is an "agency decisionmaker" must be made on a case-by-case basis with a view to whether they have a significant or substantial impact or role in the decision-making process, even if the person does not make the decision *per se.* If an improper *ex parte* contact has been made, it will void an agency decision where the decision was tainted so as to make it unfair either to the innocent party or to the public interest the agency is supposed to protect. *Cf. PATCO,* 685 F.2d, at 564. The question of whether a decision has been tainted requires analysis of whether the improper contacts may have influenced the agency's ultimate decision; whether the contacting party benefitted from the decision; whether the contents of the contact were disclosed; and whether vacation and remand would serve a useful purpose. *See PATCO,* 685 F.2d, at 564–65. In analyzing the issue we must be concerned with protecting the integrity of the administrative process, which includes the question of the appearance of impropriety from *ex parte* contacts, and the fairness of the result. *See PATCO,* 685 F.2d, at 565. However, here we depart from the majority opinion in *PATCO.* Much more instructive are the concurring opinions, and we think the proper attitude toward *ex parte* contacts are expressed therein. For example, Chief Judge Spottswood W. Robinson, III stated:

> The treatment there [in the majority opinion] accorded the most conspicuous contacts and the tone pervading the discussion tend, I fear, to minify the gravity of the improprieties that occurred, and to understate the culpability of those who initiated and those who received ex parte pleas and approaches.
>
> From the special hearing emerges an appalling chronicle of attorneys, high government officials, and interested outsiders apparently without compunction about intervening in the course of FLRA's decision-making by means of private communications with those charged with resolving the case on the merits. We have an even more distressing picture of agency decisionmakers—whose role in this formal adjudication concededly approximated that of

judges—seemingly ignorant of the substance of the ex parte rules, insensitive to the compromising potentialities of certain official and social contacts, and unwilling to silence peremptorily and firmly improper discussions that did transpire. Although the special hearing disclosed no such taint on the agency's ultimate decision as would require additional corrective proceeding, I feel compelled to review several of these incidents, for in my view the court's opinion administers a mild chiding where a ringing condemnation is in order.

*PATCO,* 685 F.2d, at 592. Equally informative are the comments of Judge MacKinnon. He said:

> The number of *ex parte* contacts that were disclosed at the remand hearing is appalling, as are the statements by counsel that such contacts were nothing more than what is normal and usual in administrative agencies and even in courts of law. That statement is categorically denied insofar as our courts are concerned. If that ever turns out to be true some very severe penalties are going to be meted out.

*PATCO,* 685 F.2d, at 622. Finally, lest there be any doubt, we categorically reject any suggestion that *ex parte* contacts in Kentucky are, or should be, the "bread and butter" of administrative proceedings to be tolerated with a knowing wink. *See Louisiana Association of Independent Producers and Royalty Owners v. Federal Energy Regulatory Commission,* 958 F.2d 1101, 1113 (D.C.Cir.1992).

Turning to the contacts between LG & E and PSC, we initially note that the record discloses little beyond the bald facts. LG & E's president met with two (2) sitting members of the PSC and gave them a settlement proposal on a matter then pending before the PSC and affidavits denying any intent to do wrong from all persons involved. There is no question that the settlement proposal was a communication on the merits between an interested party and agency decisionmakers. As such, it is improper and must be condemned no matter how innocently given or received. Moreover, the failure to disclose it, particularly after an order is entered requiring disclosure of *ex parte* con-

tacts, compounds the problem, and heightens suspicions, as well as raising the potential inference of wrongdoing. In terms of the factors for determining whether the *ex parte* contact tainted the proceedings, it is difficult to say whether the settlement proposal influenced the PSC's decision, since the result was a significantly greater refund than first offered. On the other hand, it is clear that LG & E benefitted from the ultimate result, since the nonunanimous settlement which was approved was admittedly for less than the full amount at issue. Moreover, as noted, the *ex parte* contact was not revealed on the record before the PSC. Finally, since we must remand in any event, it is also clear that a new hearing on all of the issues should clear the air of any taint which hangs over the previous proceedings, which indicates that remand would serve a useful purpose. Thus, if we were required to address the question of *ex parte* contacts, we would be inclined to reverse and remand in any event.

■ The next issue which we must address concerns the propriety of the circuit court's remedy. While we sympathize with the circuit court's desire to protect LG & E's consumers, we cannot avoid the conclusion that the circuit court improperly set rates. *Commonwealth, ex rel. Beshear v. Kentucky Utilities*, Ky.App., 648 S.W.2d 535, 536 (1982); *Kentucky Power Company v. Energy Regulatory Commission of Kentucky*, Ky., 623 S.W.2d 904, 907 (1981). While it is true that the circuit court did not direct the setting of any particular rate schedule, it did order a specific refund which directly impacts the general revenue level, which is the first step in ratemaking. We are aware that the circuit court did not identify a specific dollar amount for all aspects of its order, since there was no evidence of record as the actual amount generated by the sale of a part of the disallowed portion of the Trimble County plant. Nonetheless, having ordered a refund of the whole amount, it did improperly engage in ratemaking. Moreover, the lack of record regarding the sale and its impact on rates also strongly supports a remand to the PSC in order to properly make a record. In sum, having determined that a nonunanimous settlement is improper, we must remand the case to the PSC so it can do its job and set appropriate rates.

For the reasons set forth above, we affirm the Franklin Circuit Court's order vacating the PSC's decision, but vacate the Franklin Circuit Court's order directing the PSC to implement certain refunds, and remand the matter to the PSC for further proceedings consistent with this opinion.

HOWERTON, J., concurs.

EMBERTON, J., concurs in result and files a separate opinion.

EMBERTON, Judge, concurring.

I agree with the majority that the *ex parte* meeting between commission members and the president of Louisville Gas and Electric Company "is improper and must be condemned no matter how innocently given or received." Certainly, for this Court to hold otherwise would encourage a public perception of unfairness in our judicial and quasi-judicial systems. However, in further pursuit of fairness, we should point out that here we have the question of only the appearance of impropriety. While we must be equally concerned with that appearance, it should be made clear there is not a scintilla of evidence suggesting favoritism by the commissioners other than the meeting itself.