## In re Petition of Green Mountain Power Corporation

[385 A.2d 1110]

Nos. 58-75 & 83-75

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed April 5, 1978

*Paul D. Sheehey,* Burlington, for Petitioner.

*M. Jerome Diamond,* Attorney General, and *Mary J. Skinner*, Special Assistant Attorney General, Montpelier, for Respondents.

**Barney, C.J.** Most of the issues in this rate case were disposed of by the time of the final order of the Public Service Board on March 31, 1975. Ultimately the matter has come to settle on the appeal by the Attorney General of Vermont. His appeal raises but two issues: (1) that the motion to dismiss filed by the Attorney General at a point when Green Mountain Power had allegedly put in its evidence in chief should have been granted; (2) that the order of the Board allowed rate relief to which the power company was not entitled.

The background of this case has already had extended exposition in a previous decision reported at 133 Vt. 107, and will not be repeated here. The factual discussion will be confined to just so much of the circumstances of the case as are essential to make clear the treatment of the two quite straightforward issues of this appeal.

It is the position of the Attorney General that failure of the power company to produce evidence, in its main case, to support a rate increase required dismissal by the Board. We recognize that the Attorney General's contention concerning the lack of evidence at that point in the case is contested, but for the purposes of dealing with this allegation of error we will assume it to be true.

V.R.C.P. 41 (b) (2) gives a trial court the right, in an action tried without jury, to decline to render judgment until the close of all of the evidence. Prior to the adoption of these rules a motion to dismiss, in an action tried by court, was premature prior to findings. *In re Rathburn,* 128 Vt. 429, 432, 266 A.2d 423 (1970). All this is in accord with the thesis that the order of reception of evidence is within the trial court's discretion, and that the court, as trier, has the capacity to handle a defendant's election to stand on the insufficiency

of the plaintiff's proof by putting in no case of his own without the court being prejudiced by the tactic.

■ In a rate case involving a regulated utility, other considerations move the rule even further away from the claim for dismissal for failure of proof. The interests involved in the proceeding outreach the usual situation of contending private parties. The Board has a responsibility not only to protect the consumer from overcharge but also to preserve the capacity of the utility to provide the service required by the public.

■ ■ It is for this reason the Board has the right to solicit evidence, to enlarge the proceedings or, if necessary, to originate them in the first place. *Carpenter* v. *Home Telephone Co.*, 122 Vt. 50, 54, 163 A.2d 838 (1960). With such a responsibility, once a rate issue is opened, the Board is not required to terminate it merely because, as is alleged here, some insufficiency of advocacy may temporarily indicate an unsupported case at a point before the evidence was all in. Perhaps such a motion could be granted if the evidence was insufficient and it appeared to the Board that the public interest could thus best be served, but it is not required that it be granted. The ruling below was correct.

The second issue raised by the Attorney General is a claim that the rate order eventually granted by the Board included recoupment labelled "interim relief," in spite of the facts that such recoupment had already been waived by the utility and there was no authority by which the Board could grant interim relief.

■ Neither of these positions can be sustained. The nature of the Board's responsibility to maintain utility services and to prevent the overburdening of the ratepayer may require it to amend its orders or set aside stipulations. The test is whether the orders of the Board carry out its statutory purposes, and, of course, the Board is aided by a presumption in favor of the validity of its orders. *Wendland* v. *Green Mountain Power Corp.*, 132 Vt. 320, 322, 318 A.2d 668 (1974).

A discussion of the second issue requires some history. This rate case began in September, 1973. The utility requested a

16.7 percent increase in its retail rates for electricity. At that time, in separate litigation, the validity of automatic purchased power and fuel adjustment clauses was under scrutiny before the courts. As a consequence the Board extended the time for filing direct evidence until determination of the propriety of the fuel adjustment clause. It granted a 10 percent temporary increase. This decision came down March 29, 1974. Both of these cases were at a time of rapidly advancing fuel costs.

The utility amended its request for a permanent increase April 15, 1974, asking for 35 percent. In May the Board cancelled the existing fuel adjustment clause and granted the utility a second temporary increase of 15.4 percent. That aspect of this case was challenged and brought to this Court in the case reported at 133 Vt. 107.

Meanwhile, time was passing and the utility, in June 1974, further amended its permanent rate increase request by 27.5 percent, bringing its total requested level of permanent rate increase to 62.5 percent. This request was suspended pending final determination, as the previous requests had been, and an increase in the temporary rates already allowed of an additional 30 percent was allowed at the end of July. This meant that the total of temporary rate increases allowed represented a total increase of 55.6 percent.

The permanent rate increase hearing began in October, 1974, and concluded on March 21, 1975. During this period, on November 28, the Board reduced the temporary rate increase previously allowed to a level of 35 percent over base rates. In January of 1975 the temporary rates were restored to the previous 55.6 percent level. The final order was issued March 31, 1975, and allowed a 36.36 percent permanent increase over the former base rates. The order also provided that this utility would not be required to refund any of the money collected under any temporary rate increases granted in this proceeding, nor would it be allowed to collect any recoupment for this sixteen month period.

It is the second argument of the Attorney General that this rather pragmatic decision to allow the utility to retain the additional money collected under temporary rate increases to cover established revenue deficiencies is actually recoup-

ment. More than that, claims the Attorney General, as recoupment it fails to follow the requirements of 30 V.S.A. § 226(b) and sets at naught the stipulation entered by the utility waiving "any claim to recoup or recover any difference between the rates finally approved in such order and the rates charged prior thereto."

30 V.S.A. § 226 provides in subsection (a) that if the Board finds justification on any of three grounds, after ordering that proposed rate changes not go into effect, it may authorize temporary rate increases pending disposition as it did here. *In re New England Tel. & Tel. Co.*, 131 Vt. 310, 316, 305 A.2d 598 (1973). The three grounds relate to the interest of the public in a change of rates, or to the necessity of a change to insure adequate and efficient service or to preserve the property of the public's utility devoted to public use.

When such temporary orders are issued, after hearing to determine the reasonableness of the temporary rates in view of the statutory purpose, the Board may require the company to provide refunding procedures at the close of the proceedings, if appropriate. It may also allow the company to recover any determined shortages by a temporary rate increase over and above the rates finally determined. 30 V.S.A. § 226(b).

This is the statutory recoupment authorization, and no such further temporary increase for that purpose was ordered. Therefore, it may be said that in the statutory sense there is no issue of recoupment here.

However, the argument of the Attorney General is that what the Board did had the same substantive effect as recoupment. Examining the exact language of 30 V.S.A. § 226(b), we find that it makes no provision for recognition of any of the return to the utility on account of temporary increases granted pending final determination:

> If the board orders that the changed rate shall not go into effect until final determination of the proceedings, and if, upon final disposition of the issues involved in such proceeding, the rates as finally determined are in excess of the rates in force at the time such changes are filed, then such public service company shall be permitted to amortize and recover, under the direction of the board, by means of a temporary increase over and above the

rates finally determined, such sum as shall represent the difference between the net operating earnings obtained from the rates in force at the time such changes are filed and the net operating earnings which would have been obtained under the rates finally determined if applied during the period such suspension order was in effect based upon the same volume of business, or such portion of the difference as may be just and reasonable, in the judgment of the board, in view of economic changes which may have occurred since the filing.

Looking at that statutory language standing alone it would seem to authorize the Board to allow recoupment by temporary rate increase of all differences between the original rate and the final rate, based on the volume of business done during the period, irrespective of any temporary rate recovery during the period. Since it is the view of the Attorney General that the "just and reasonable" limitation is operative only in the presence of "economic changes" found by the Board to have occurred since the filing, it does not include consideration of temporary rate increases.

Since such a literal view of § 226 (b) could support a double recovery as well as deny relief essential to the continued operation of the utility, it is apparent that this section, as is so often the case, is to be construed as part of a statutory pattern and consistent with statutory purpose. Absurd results are to be avoided, if possible. *Audette* v. *Greer*, 134 Vt. 300, 302, 360 A.2d 66 (1976).

Since the use of temporary rate increases pending final disposition is a part of the very statute dealing with the utilities' right to recover shortfalls in its structure during adjudication, it would be irrational not to conclude that the Board should recognize recoveries already made by temporary rate increases in determining the shortage. Certainly the use of the phrase, "such portion of the difference as may be just and reasonable, in the judgment of the board" invites the thought that either the temporary rate returns are to be considered "economic changes" or that the Board is not confined to "economic changes" but is expected to consider temporary rate returns.

The temporary rates here involved were arrived at after notice and hearing, as provided by 30 V.S.A. § 226(a). Each of them represented a judgment that the public interest required a change in rates, or that the change was necessary for the provision of adequate service or for the preservation of utility property devoted to public use. Each of the temporary rate orders, none of which are appealed here, are, under the statutory test, presumably reasonable.

An additional circumstance relates to the long period of time over which the rate proceedings persisted. The temporary rate orders themselves reflect an upward trend, followed by a down turn. The arbitrary relation back of the permanent rate at the end of a down turn could put a utility in the position of having a high cost curve coming in the midst of a rate hearing, perhaps due to OPEC pricing, cut off without remedy. It seems to be with this circumstance in mind that the Board made its permanent order prospective from a date following issuance, and in effect, affirmed its temporary rate orders as the permanent rates in force for the sixteen month period of the proceedings. See *In re Green Mountain Power Corp.*, 133 Vt. 107, 109–110, 329 A.2d 372 (1974).

Having in mind the overall purpose of the regulatory power of the Board to maintain utility service at a just and reasonable cost to the consuming public, the Board's conclusion from the facts that there was not a sufficient shortage in the reasonable return to the utility to entitle it to any recoupment was reasonable, and within its competence and expertise. *In re Village of Stowe Electric Dept.*, 134 Vt. 559, 563–64, 367 A.2d 1056 (1976). The result reached was supported by the facts, and followed the purposes and intents of the statute. It is affirmed.

A motion to dismiss this proceeding was urged previous to arguments on the merits and readvanced there. It had many points of merit. However, part of the amplification of this case resulted from an entry made in this Court based on a stipulation that inadvertently dismissed the whole matter. The stipulation did not justify that entry, and therefore the Court determined that an opportunity to present the issues foreclosed by the original entry should be allowed. This was

a burden to all parties, but it was the view of the Court that fairness and full consideration required it.

*The final order of the Public Service Board dated March 31, 1975, is affirmed.*