## In re Petition of New England Telephone and Telegraph Company for an Increase in Rates

[433 A.2d 263]

No. 312-80

Present: Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.

Opinion Filed June 2, 1981

*Richard W. Blackburn,* Boston, Massachusetts, *Christopher M. Bennett,* Burlington, and *Thomas M. Dowling* of *Ryan Smith & Carbine, Ltd.,* Rutland, for Petitioner.

*Thomas J. Kenney* and *Stephen S. Blodgett,* Burlington, for Public.

*M. Jerome Diamond,* Attorney General, and *Thomas R. Viall,* Assistant Attorney General, Montpelier, for State.

**Larrow, J.** This appeal is a sequel to the remand which we ordered in *In re New England Telephone & Telegraph Co.,* 135 Vt. 527, 382 A.2d 826 (1977). It is taken from an order of the Public Service Board filed August 27, 1980. A further order, denying reconsideration, was issued September 19, 1980. Both the Company and the public have appealed, and the Board has certified three questions for review. They relate to claims of error in (1) recoupment, (2) economic changes, and (3) rate design.

Our previous order of remand, from which the subsequent proceedings below resulted, was as follows:

> *The order of the Public Service Board is affirmed except as follows: (1) the cause is remanded for proper findings regarding inclusion in the rate base of property held for future use and working capital and for proper findings regarding rate design and recoupment; (2) the cause is remanded for hearings on updating and as to those matters for which no prior hearing has been held. . . .*

Neither party claims any error with respect to the Board's findings and conclusions regarding property held for future use and working capital. Both claim error in the time period used by the Board in its recoupment allowance. The Company claims error in including the impact of its directory assistance charging plan in recoupment calculations, a claim pressed only in the event of a ruling adverse to it with respect to the appropriate recoupment period. It also claims error in ordering changes in local coin rates (pay telephones) and directory assistance charges without further rate changes to offset the resulting revenue decreases.

Simplification of the history of this litigation is virtually impossible. It involves two consolidated rate filings by the

Company, the first on January 21, 1974, to take effect February 20, 1974, for a rate increase of about 23%, and the second on June 24, 1975, to take effect July 24, 1975, of about 17%. Each was suspended by Board order within thirty days of filing. The first is Docket No. 3806, the second Docket No. 4033. There are some 142 docket entries below since our previous remand. But a brief chronology of the dates significant in consideration of the limited issues before us on appeal is as follows:

| | |
|---|---|
| February 20, 1974 | Effective date, rate increase in No. 3806. |
| July 24, 1975 | Effective date, rate increase in No. 4033. |
| January 24, 1976 | Public's claimed date for recoupment cut-off. |
| March 24, 1976 | Recoupment cut-off date per Board order appealed from. |
| April 1, 1976 | Effective date of allowed rates. |
| November 8, 1977 | Supreme Court opinion directing remand (reargument later denied January 9, 1978). |
| September 14, 1979 | Effective date of temporary rates in No. 4366, a further rate filing by the Company, conceded by it as the proper terminal date for the recoupment in issue here. |
| August 27, 1980 | Board decision on remand, here appealed from. |

#### (1) *Recoupment Period*

Several matters with respect to the recoupment issue are not presently in conflict, including the amounts involved. In its order of August 27, 1980, the Board allowed recoupment in No. 4033 from July 24, 1975, the proposed effective date of the proposed rates, to April 1, 1976, effective date of the rates approved by the Board on March 24, 1976. No one questions the date used for initial recoupment. Both parties question the terminal date. The Company claims it should be Sep-

tember 14, 1979, the date of an "economic change" under 30 V.S.A. § 226(b) when a further increase absorbing it became temporarily effective, thus terminating a period which would otherwise have run until final determination. The public claims the terminal date should have been January 24, 1976, six months after the proposed effective date of the rates. In the alternative, its claim is that the period adopted by the Board is supportable as a matter of discretion.

The difference in amounts involved is substantial. The Board order allowed a recoupment of $644,000. Under the Company's claim of a September 14, 1979, termination date, the allowable recoupment would be $7,165,000. These conclusions, and the methods by which they are computed, are not the subject of dispute in this appeal. Both parties concede the issues to be legal, not factual, and to revolve around interpretation of 30 V.S.A. § 226(b). That statute provides:

> (b) If the board orders that the changed rate shall not go into effect until final *determination of the proceedings,* and if, upon *final disposition of the issues* involved in such proceeding, the rates as *finally determined* are in excess of the rates in force at the time such changes are filed, then such public service company shall be permitted to amortize and recover, under the direction of the board, by means of a temporary increase over and above the rates *finally determined,* such sum as shall represent the difference between the net operating earnings obtained from the rates in force at the time such changes are filed and the net operating earnings which would have been obtained under the rates *finally determined* if applied *during the period such suspension order was in effect* based upon the same volume of business, or such portion of the difference as may be just and reasonable, in the judgment of the board, in view of economic changes which may have occurred since the filing. (Emphasis added.)

Consideration of the controlling provisions of § 226(b) must be coupled with examination of the following section, 30 V.S.A. § 227. Section 227(a) provides, in substance, that if the Board orders a proposed change not to go into effect pending final determination, it shall proceed to hear the matter as promptly as possible, and determine it within six months of the proposed

effective date. If it does not do so, the company may put the proposed rates into effect under an approved repayment bond. The arguments of the parties, and the reasoning advanced by the Board, revolve around these statutory provisions. We must analyze these contentions.

The public argues, in chief, that the "regulatory lag" very definitely involved here could have been avoided by the Company, by filing the § 227(a) bond, and that the decision to do so or not was totally within its control. It says that the "period such suspension order was in effect" terminated on January 24, 1976, six months after the proposed effective date of the rate schedule, relying on our holding in *In re New England Telephone & Telegraph Co.*, 131 Vt. 310, 315, 305 A.2d 598, 601 (1973). In that case we held that where such a bond *is* filed, the Board has no further authority to suspend the operation of the rates. We did not hold, as the public would seem to argue, that the company is required to post a bond or forever forego its right of recoupment. The Company has the option of filing a § 227(a) bond, but the public would in effect have us change the optional posting of a bond into a requirement that one be posted. The argument that such ruling, in this case, terminated the suspension order after six months, within the meaning of § 226(b), is ingenious but untenable. In fact, the suspension order *continues unless suspended* by the filing of a bond, and that did not occur in this case. Nor is such filing totally within the control of the Company, as is urged. Its amount and its sureties are subject to Board approval. And, as was conceded upon argument, the not inconsiderable expense involved in such bonding would be an item ultimately chargeable to the ratepayer. Further, the order involved in the first appeal, on March 24, 1976, purported to be "final" and cut off the right to implement the rates under bond.

Nor are we impressed by the argument that the "regulatory lag" involved here occurred "at the whim of the Company," with resultant "great injustice to the ratepayers." The record does not support that contention. Some of the delay is undoubtedly inherent in the statutory process; some of it was avoidable. But allocation of blame is not our function, and is not possible on the record before us. We do note that subse-

quent to our remand, some two and one-half years elapsed before the decision here appealed from.

The public's position is inconsistent, also, with the result reached in *In re Village of Stowe Electric Department*, 134 Vt. 559, 367 A.2d 1056 (1976), in which we affirmed a recoupment award of approximately one year. See also *In re Green Mountain Power Corp.*, 136 Vt. 170, 174–75, 385 A.2d 1110, 1112–13 (1978).

The public's alternative position is that the Board properly determined, within its discretionary powers, that "final disposition" of No. 4033 occurred on April 1, 1976, the effective date of its March 24, 1976, order. It also argues that this determination was correct as a matter of law, citing 30 V.S.A. §§ 3 (b), 12, and 14.

■ The cited statutes have little or no bearing on the issue we must here determine, which is when the "final determination" or "final disposition of the issues" referred to in 30 V.S.A. § 226 (b) occurs. Section 3 (b) simply defines when a case shall be deemed completed (the time of entry of a final order even though appeal is taken) for the purpose of establishing when a board member who retires before such completion of the case is entitled to participate in concluding and deciding that case under § 3 (a). Sections 12 and 14 preclude an automatic stay of a final order by appeal and set out procedures for obtaining such a stay. None of these statutes has any particular relevance to the real question at issue here, which is the period during which the suspension of the proposed rates was in effect. That question is not answered by determining when a judgment is final for purposes of taking an appeal, nor by deciding when a retired board member may participate. The filed rates were effectively suspended, under 30 V.S.A. § 227, by an order entered soon after they were filed, and remained so suspended until the order of August 27, 1980. We concur in the position taken by the Company that, as a matter of law, rather than discretion, this is the period to which the statutory right of recoupment applies, absent intervening economic change. That intervening economic change is conceded by the Company to have occurred on September 14, 1979, with the implementation of temporary rates

in Docket No. 4366 exceeding the amount of the determined deficiency.

Our conclusion that final disposition of the issues here involved occurred in 1980, rather than 1976, is strengthened by the fact that the 1980 order resulted in updated revenue requirements, and significant determinations with regard to property held for future use, working capital, and rate design which were not part of the 1976 order. The 1980 date contended for is both the legal and appropriate terminus for the right of recoupment. The 1980 date is limited, however, by the intervening temporary rate increase approved September 14, 1979, which ended the period of rate deficiency under the filed rates here in question. The statutory language compels this conclusion, and the equities of the situation dictate no other result. The recoupment allowed is a large sum, but it represents only what the ratepayers would have paid had a bond been posted, with such payment deferred.

We therefore hold that the recoupment period applicable to the instant case, in Docket No. 4033, is July 24, 1975, to September 14, 1979, and that reversal and remand is required for the allowance of appropriate recoupment for that period.

### (2) *Directory Assistance Charging Plan*

Briefed at length by the parties was a contention by the Company that the Board erred in its recoupment computations for the period during which it allowed recoupment. The claimed error was in reducing the recoupment entitlement for that period by increased revenues and costs savings realized through implementation of the directory assistance charging plan in 1977, well after the recoupment period found appropriate by the Board. We need not consider this claim of error, because the Company concedes it to be moot in light of our holding as to the recoupment period. The approved earnings methodology employed by the Board automatically takes into account the actual effects of the directory assistance charging plan from its implementation on January 1, 1977, to the end of the recoupment period, because it is based upon actual reported earnings for that period.

### (3) *Pay Telephone and Directory Assistance Rate Changes*

Upon remand after our original decision, the Board made two significant changes in the rates it had originally approved.

It increased from three to five the allowance per month for directory assistance calls without charge, and it reduced the local coin call (pay station) rate from 20¢ to 10¢. The Company does not seek to upset those decisions. But it urges error in denying its request, set out in a motion for reconsideration, to require rate design changes reflecting additional revenue requirements resulting therefrom. It puts these requirements at $534,000. Of this amount it allocates $94,000 to the net impact of providing directory assistance service as ordered, and $440,000 to the revenue reduction associated with the 10¢ rate. It claims that absent such adjustment it is deprived of the opportunity to receive even the level of revenues which the Board itself found appropriate.

The Company's position, as a general proposition, is not without support. We have condemned unreasonably low and confiscatory rates, even when imposed to cure discrimination. *In re New England Telephone & Telegraph Co.*, 116 Vt. 480, 520, 80 A.2d 671, 694–95 (1951). The rates cannot be arbitrary or capricious. *City of Newport* v. *Citizens Utilities Co.*, 116 Vt. 103, 107, 70 A.2d 590, 593 (1950). They must be "just and reasonable." *In re Green Mountain Power Corp.*, 131 Vt. 284, 294, 305 A.2d 571, 576 (1973). But we have also recognized that in every rate case there is left a reasonable margin of fluctuation and uncertainty. *In re Central Vermont Public Service Corp.*, 116 Vt. 206, 220, 71 A.2d 576, 585 (1950). The amounts claimed by the Company here, however, would seem to exceed that "reasonable margin," even in a case involving the large totals making up this rate increase. Nor are we impressed with the public's argument that future rate cases can adjust for present errors, whatever their extent. The language to that effect in *In re Central Vermont Public Service Corp.* simply cannot be taken to extend to errors of whatever magnitude, as such a conclusion would render the whole ratemaking process nugatory.

But it does not follow that reversal on this point is here required. The Company argues its position as though the amounts which it claims were either established or certain, but the record does not bear out this contention. Although the findings below are far from crystal clear, being interspersed without distinction through conclusions and general discussion, it

seems reasonably apparent that the Board did not determine the amounts involved to be as substantial as the Company claims. There was evidence introduced upon which the Board could have found the Company claims to be substantiated, but it was far from undisputed.

The $94,000 figure assigned to the change in the free-call allowance was only an estimate by the Company's witness. The difference in "suppression effect" between a three-call allowance and a five-call allowance was not great, amounting to only about 6%, and this seemed to vary greatly from area to area. Even this amount was termed high by the expert witness for the public, and the Board, in an unchallenged finding, termed it "so little." The Board appears to have concluded that the financial effect of the change involved was not of sufficient significance to require a rate restructuring to supply additional annual revenue. We do not hold that an opposite result would not have been sustainable, but we are unconvinced that, on the record before us, the Company has demonstrated actions exceeding the "reasonable margin" of uncertainty. Its claim of error in this respect is not sustained.

The claim for a $440,000 adjustment reflecting revenue loss from the reduction in future local coin call rate stands on a somewhat different footing. Its amount is far more significant. But it appears to be no more definite. As the Board pointed out in its findings, the computation of cost of service failed to include any allocation of cost to interstate service, in spite of evidence that some 84% of calls made from coin stations are toll calls, either interstate or intrastate. Although the Board cannot order an increase in rates for interstate calls from a Vermont pay station, costs associated with such calls should be allocated to them, and not made the basis for intrastate rates, either local or long distance. Our prior opinion indicated the right and duty of the Board in this respect. See *In re New England Telephone & Telegraph Co., supra*, 135 Vt. at 532, 382 A.2d at 831. By failing to convince the Board that the amount claimed was justified, the Company did not meet its burden. With an insufficient showing below as to the actual revenue deficiency attributable to intrastate service, it cannot here complain that all of that deficiency was not made up by

rate adjustments in such service. The Company's claim of error in this respect is not sustained.

*The order appealed from is affirmed, except as to recoupment. The cause is remanded with direction that the Public Service Board allow recoupment in Docket No. 4033 for the period of July 25, 1975, to September 14, 1979, in accordance with the views herein expressed. Let the result be certified.*