# In re Petition of Central Vermont Public Service Corporation for a 6.23% Increase in Rates

[449 A.2d 904]

Nos. 183-81 and 371-81

Present: Barney, C.J., Billings, Hill and Underwood, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed June 8, 1982

*Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.,* and *Donald L. Rushford,* Rutland, for Petitioner.

*Michael L. Burak* and *Charles Storrow,* Law Clerk (On the Brief), Montpelier, for Respondent.

Hill, J. The Central Vermont Public Service Corporation appeals from two decisions of the Public Service Board concerning Central Vermont's petition for a rate increase. This Court consolidated those appeals, and they were briefed and argued together. For the reasons detailed in the body of this opinion, we reverse the decision and remand to the Board for further proceedings.

I.

The facts and procedural history of this case present a tangled thicket for appellate review. On March 21, 1980, Central Vermont filed a proposed rate increase. The proposal requested an additional 4.328 million dollar rate increase to cover increases in power costs assignable to the company's retail service in Vermont. The Board suspended this increase under 30 V.S.A. § 226(a). The Board scheduled a hearing on

the petition on August 14, 1980. Before the hearing, both the company and the Department of Public Service (Public) prefiled testimony estimating the company's power costs.

At the hearing on the petition, the company attempted to change its prefiled testimony by submitting more recent data on its "actual" costs for purchased power. The new data purported to show that the power costs had risen above the estimates in the prefiled testimony. The Board granted the Public's motion to exclude this evidence. Subsequently, the company formally moved to update the record in the case with what the company argued were "actual" data concerning its power costs. The Board refused this request as well.

On September 4, 1980, the company filed another rate increase. This subsequent filing is not at issue in this appeal. The subsequent filing, however, did have a substantial impact on this case: it superseded the prior filing for future rates, thereby fixing the dates that the prior filing would be effective. Consequently, the rates at issue in this case, both before the Board and on appeal, only concern the period from April 23, 1980, to October 5, 1980.

On February 26, 1981, the Board entered an order (hereinafter termed the rate order) which purported to determine rates on a prospective basis only. The rate order estimated the company's power costs at 2.32 million dollars, and allowed an increase of that amount.

On July 30, 1981, the Board entered an order (hereinafter termed recoupment order) concerning the company's petition for recoupment. In its recoupment order, the Board used the same percentage for calculating the recoupment as it employed in calculating rates under the February 26, 1981, order.

On appeal, Central Vermont Public Service Corporation challenges the Board's two orders on the ground that they do not set just and reasonable rates. This general claim is premised upon four specific assertions. First, the company claims that the rate order should be reversed because the Board refused to admit and consider the "actual" data on power purchase costs at the hearing. Second, the appellant challenges the Board's rejection of the company's request to "update" the evidentiary record after the hearing. Third, the company challenges the Board's factual findings as unsup-

ported by the evidence. Finally, the company challenges the recoupment order, claiming that the method for calculating recoupment was inappropriate. Because of our disposition of the first claim, we need not address the appellant's remaining objections.

## II.

We begin by noting the standards of review. The Board's duty to set just and reasonable rates is well settled both by statute, see 30 V.S.A. § 218, and our case law. E.g., *In re New England Telephone & Telegraph Co.*, 139 Vt. 578, 586, 433 A.2d 263, 268 (1981); *In re Green Mountain Power Corp.*, 136 Vt. 170, 177, 385 A.2d 1110, 1114 (1978). This Court recognizes the expertise of the Public Service Board and therefore assumes a limited role in the ratemaking process. The complexities of utility regulation place an added premium upon the expertise of the Board in ratemaking. We defer to the findings and conclusions of the Board unless they are clearly erroneous. See, e.g., 30 V.S.A. § 11(b); *In re Green Mountain Power Corp.*, 131 Vt. 284, 303, 305 A.2d 571, 583 (1973). The determination of just and reasonable rates is certainly within this sphere of broad judicial deference. The Board also enjoys substantial discretion in evidentiary matters. See *In re Green Mountain Power Corp., supra*, 136 Vt. at 173, 385 A.2d at 1112.

We recognize that the procedural history of this case posed unique difficulties for the Board. From November, 1979, to October, 1980, Central Vermont filed four rate increases. Then, between the dates of the hearing and decision in the filing at issue in this case, the company filed yet another rate increase. These multiple filings taxed the limited resources of the Board and colored the outcome of this particular case. By the time the Board issued its rate order in this case on February 26, 1981, the subsequent filing had restricted the impact of this case to a very limited period: the rates would only be effective from April 23, 1980, to October 5, 1980. Thus, the rates at issue, on the date of the Board decision, covered a definite time frame that had already passed. Nevertheless, the Board noted in its opinion that "this decision exclusively addresses prospective rates." We believe that this

erroneous conclusion distorted the Board's responsibility in this case and infected its evaluation of the proffered evidence.

Inherent in every rate case is a time lag, which extends from the date of filing to the date of decision by the Board. Utility rates are usually effective forty-five days after the date of the original filing. Their effectiveness is not postponed until the date of decision by the Public Service Board. See 30 V.S.A. § 225(a). The rates filed by the company go into effect unless suspended by the Board. See 30 V.S.A. § 226(a). Even if the rates are suspended, the company may be entitled to recoup lost revenues from the date of filing on the basis of the increase that is ultimately granted. See 30 V.S.A. § 226(b). In addition, there is a bonding procedure which, after six months, allows the company to impose the increased rates subject to a recovery right in its customers. See 30 V.S.A. § 227(a). Thus, the Board never sets rates "on a prospective basis only" as it claimed in this case. The Board's decision works retrospectively (from the decision date back to the filing date) and, in the absence of multiple filings, prospectively (from the decision date forward).

█ The Board's statement that the instant filing involved prospective ratemaking ignored reality. By the time the Board issued its decision, it knew that this case would have retrospective effect only. Consequently, the Board relied upon a distorted view of the impact of its decision. Its duty was to set a just and reasonable rate of return for the time period at issue. In most cases, of course, that period has both a prospective and a retrospective component. In this case, however, the period at issue was retrospective only.

██ We do not question the Board's discretion to consolidate multiple filings. See *In re New England Telephone & Telegraph Co.*, 135 Vt. 527, 539, 382 A.2d 826, 835 (1977). Indeed, if such a procedure had been followed in this case, the confusion over whether this decision was "prospective" or "retrospective" might well have been avoided. In any event, the Board chose not to consolidate the multiple filings. This Court has noted that certain rights and privileges accrue under each filing, which are not protected by subsequent filings. See *In re Green Mountain Power Corp.*, 139 Vt. 368,

371, 428 A.2d 1134, 1136 (1981). Subsequent cases cannot correct past errors. See *In re New England Telephone & Telegraph Co., supra,* 139 Vt. at 586, 433 A.2d at 268. Thus, the Board was bound to give due consideration to this filing, without allowing it to be prejudiced by the pendency of other cases.

### III.

The Board granted the Public's motion to exclude certain evidence proffered by the company during the hearing. The Board rejected the evidence for several reasons. First, the Board noted that the case had not been unduly delayed, and that the company's data consisted of relatively recent figures. Second, the Board noted that the late change would be unfairly prejudicial to the Department of Public Service, which had prepared its testimony on the basis of the company's prefiled evidence. Finally, the Board noted that it preferred to "normalize," i.e., utilize an average, in computing power costs. Thus the Board held that the so-called "actual" data were inadmissible.

We believe that the Board's refusal to allow the company to submit "actual" data during the hearing reflects the Board's distorted view of the temporal effect of its decision. In the Board's rush to set rates for the future, it apparently forgot that there was another time frame at issue in the case. The Board's objections to the evidentiary offer ignore the retrospective aspect of the ratemaking process, an aspect which lent special weight to the offer of "actual" data.

First, even assuming that the Board was correct in asserting that the case had not been unduly delayed, and that the company's prefiled evidence was relatively recent, these claims say nothing about the appropriateness of excluding additional evidence. Indeed, the essence of the company's petition was that dramatic changes in the cost of purchased power had occurred in a short period of time. These changes purportedly could be seen in the company's "actual" costs since the filing of the rate increase. Under such circumstances, relatively recent data could have been outmoded and misleading—which was the precise offer made by the company.

Second, the Board's assertion of prejudice to the Department is unsupported in this record. The Board did not con-

sider the most expedient alternative to the late change: it could have simply adjourned the hearing. Adjournment would have allowed all parties the time necessary to digest the new data. We recognize that there may be circumstances where adjournment could prejudice the interests of a party, or create a backlog that could impair the basic function of the Board. The Board, however, did not even address the feasibility of this option. A bald assertion of prejudice is insufficient to exclude evidence in the face of an obvious remedy for any surprise suffered by the parties.

▮ The most beguiling ground for exclusion of the evidence is that the Board's reliance on the "normalized" method of computing actual power obviated any need to consider "actual" data. We normally defer to the Board's expertise in evaluating competing accounting methods. See *In re Young's Community TV Corp.*, 141 Vt. 53, 56, 442 A.2d 1311, 1313 (1982). This deference, however, does not extend to refusing to consider evidence supporting an alternative accounting method. Cf. *In re Green Mountain Power Corp.*, *supra*, 139 Vt. at 372–73, 428 A.2d at 1137 (dismissal of rate petition for insufficiency of evidence is proper only after petitioner has opportunity to present additional proof). The company was vigorously arguing that the "actual" data approach was preferable to the "normalized" data approach employed by the Board for computing purchase power costs, particularly in light of the company's experience since filing for an increase. Had the Board admitted the data, and then made findings and conclusions on the appropriate accounting method, the Board may well have concluded that the company's evidence was insufficient to compel abandonment of the "normalized" method. They may have reached the opposite conclusion. Compare *Latourneau* v. *Citizens Utilities Co.*, 125 Vt. 38, 43, 209 A.2d 307, 312 (1965) ("Valuation should be based on evidentiary facts relating to a time certain.") with *In re Young's Community TV Corp.*, *supra*, 141 Vt. at 56, 442 A.2d at 1313 ("Selecting an appropriate accounting method for the computation of expenses and a rate base is a matter within the Board's expertise.") (citations omitted). In any event, the essence of the Board's inquiry should have been a careful sifting of the evidence offered by both sides,

and a reasoned statement on why one set of figures was more reliable than the other. The Board did not do this. Rather, they chose to simply exclude the evidence.

 The exclusion of relevant evidence in an administrative proceeding is presumptively invalid. The Board's own regulations adopt the standards outlined in the Administrative Procedure Act, 3 V.S.A. § 810(1), to govern the admissibility of evidence:

> Irrelevant, immaterial, or unduly repetitious evidence shall be excluded. The rules of evidence as applied in civil cases in the [superior] courts of this state shall be followed. When necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible thereunder may be admitted (except where precluded by statute) if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs. . . .

Appendix A. sec. (1), Department of Public Service Rules of Practice, *reprinted in* Titles 28–33 Vermont Regulations Annotated 167 (Fox 1980). The general rule applicable to trial courts is that evidence is admissible if it is material and relevant. See *State* v. *Patnaude,* 140 Vt. 361, 370, 438 A.2d 402, 405 (1981). Certain considerations may preclude the admission of logically relevant evidence, see *id.* at 377, 438 A.2d at 409, and procedural rules may legitimately penalize parties for failing to offer evidence at the proper stage of the hearing. See, e.g., V.R.C.P. 43(h); V.R.Cr.P. 26(c). Cf. *In re New England Telephone & Telegraph Co., supra,* 135 Vt. at 539, 382 A.2d at 835 (upholding the Board's discretion in permitting updating).

 This Court has recognized that evidence is admissible in agency proceedings even though the evidence would normally be excluded in court hearings. See *In re New England Telephone & Telegraph Co., supra,* 135 Vt. at 536, 382 A.2d at 833. This discretion, now codified in the Administrative Procedure Act, see 3 V.S.A. § 810(1), recognizes the need of agencies to consider any evidence which may illuminate the case. See B. Schwartz, Administrative Law § 115, at

336 (1976). But the right to admit such evidence does not imply that agencies are also free to exclude relevant evidence. See *In re New England Power Corp.*, 103 Vt. 453, 459, 156 A. 390, 392–93 (1931). "An agency refusal to receive evidence that is competent, relevant, and material is reversible error." B. Schwartz, *supra*, § 114, at 333 (citing *Russell-Newman Mfg. Co.* v. *NLRB*, 370 F.2d 980, 984 (5th Cir. 1966); *NLRB* v. *Burns*, 207 F.2d 434 (8th Cir. 1953)). See also *Atlas Copco, Inc.* v. *Environmental Protection Agency*, 642 F.2d 458, 467 (D.C. Cir. 1979); *Catholic Medical Center of Brooklyn and Queens, Inc.* v. *NLRB*, 589 F.2d 1166, 1170 (2d Cir. 1978).

Under general principles of evidence law, applicable to agencies and trial courts, the Board plainly erred in rejecting the evidence offered by the company.[1] In doing so, the Board also violated its own regulation. The Board's departure from its own rules under these circumstances is improper. See *Bishop* v. *Town of Barre*, 140 Vt. 564, 578, 442 A.2d 50, 56 (1982).

The impact of this error on the Board's decision is fatal for several reasons. First, the exclusion prevented the company from making a full case against the use of "normalized" data in the context of the retrospective nature of this decision. As a result, this Court can only wonder as to the merits of the company's position and the reasonableness of the Board's final order. We have been deprived of potentially important evidence and Board findings on that evidence. Most important, the exclusion runs counter to the basic purpose of the regulatory system. We have noted in the past that all parties to the rate-making process share a common interest in arriving at just and reasonable rates. See *In re New England Telephone & Telegraph Co.*, *supra*, 135 Vt. at 537–38, 382 A.2d at 834. That process is ill-served by the exclusion of relevant evidence. In the end, all parties to the ratemaking

---

[1] On appeal, the appellee contends that the "actual" data were no more than revised estimates. The company vigorously disagrees. We believe this dispute would be better settled by a trier of fact after due consideration of the evidence itself. In any event, no one questioned the critical factor for this appeal: the excluded evidence was material and relevant.

process will be harmed if decisions are based upon conjecture rather than fact.

We hold that it was error for the Board to exclude the additional data on "actual costs" offered by the company at the hearing. We wish to emphasize that this is a narrow holding. As stated previously, some circumstances may justify the exclusion of relevant evidence in Board proceedings. On the face of this record, however, there is no adequate justification to support the Board's ruling.

## IV.

Our resolution of the evidentiary issue obviates any need to consider the other objections raised by the appellant. The company's request to "update" the evidentiary record after the hearing focused upon the data which were excluded at the hearing. Our ruling in this case requires the Board to admit that data in the hearing on remand. Similarly, we cannot address the company's challenge to the rate order on the ground that it is not supported by the evidence. This claim may be substantially altered by consideration of new evidence on remand. Finally, we cannot address the company's challenge to the recoupment order. Recoupment is calculated by reference to "the rates finally determined." 30 V.S.A. § 226(b). Since a remand may alter the rate order in this case, the recoupment order in this action is not ripe for our consideration.

*Reversed and remanded.*