### Petition of Village of Hardwick Electric Department

[466 A.2d 1180]

No. 82-407

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed September 21, 1983

Motion for Reargument Denied October 13, 1983

*Ralph W. Howe III* of *Paterson, Walke & Pratt, P.C.*, Montpelier, for Plaintiff-Appellant.

*Gerald R. Tarrant, Jon T. Anderson* and *Michael Marks,* Montpelier, for Defendant-Appellee.

**Gibson, J.** The Village of Hardwick Electric Department (petitioner) appeals a Public Service Board order deciding two rate cases. In its appeal, petitioner contends (1) that the Board misconstrued 30 V.S.A. § 2923 when it established the rate of return allowed to petitioner, (2) that the Board failed to make adequate findings of fact, and (3) that the Board erred in ordering refunds to be made prior to the termination of all proceedings, including appeal. For the reasons stated herein, we affirm the decision of the Board.

440

## I.

The statute that is the primary focus of this appeal, 30 V.S.A. § 2923, provides as follows:

(a)  In determining rates charged by a municipal plant the public service board shall allow, in addition to all other factors, a reasonable rate of return on capital investments. The return shall be commensurate with that permitted private utilities having corresponding risks and equivalent to that necessary for private utilities to assure confidence in the financial integrity of the enterprise so as to maintain its credit and attract new capital.

(b)  Revenue received as a return on capital investment shall be retained by the municipal utility and held in a contingent fund for use by it in that or any subsequent fiscal year.

Petitioner contends that under § 2923 a municipal utility is entitled to earn a return equal to that of a private utility. Petitioner points to rates of return as high as 15% on equity for private utilities in Vermont and New England, and it seeks a 12% return on the nondebt portion of its capital investment, known as retained earnings.

Although § 2923 requires that municipals be allowed a return commensurate with "private utilities having corresponding risks," neither the petitioner nor the Board could point to a private utility having risks corresponding to those of petitioner. One reason offered was that petitioner is smaller than most private utilities. However, a more cogent reason, as found by the Board, is that the risks faced by private and municipal utilities are "so different that only the most general sorts of conclusions can ordinarily be drawn by comparing the one to the other." Although the two types of utilities face comparable business risks in seeking to provide adequate service to their customers, their financial risks are quite different, a fact previously noted by this Court. See *Hastings* v. *Village of Stowe,* 125 Vt. 227, 233, 214 A.2d 56, 61 (1965). A private utility must obtain a portion of its capital through the sale of stock, and it must be able to pay to its stockholders an adequate rate of return that will also be sufficient to attract new shareholder capital when needed. A municipal utility, having no stockhold-

ers, does not have to pay stock dividends or compete on the market for equity capital.

The difference in financial risk was acknowledged by petitioner's expert on rates of return. He was unable to compare petitioner to a private utility because standard formulas for measuring financial risk for a private utility are designed to show the level of return on equity required to induce investors to buy a firm's stock. To overcome this difficulty, petitioner's expert attempted to compare it to an electric cooperative; however, this analogy was rejected by the Board as pertaining to an "entirely different" kind of enterprise. Since an electric cooperative obtains a portion of its capital from its ratepayers but must return that capital to the ratepayers in a rotation cycle that may vary between ten and thirty years, we agree with the Board's conclusion and defer to its expertise. 30 V.S.A. § 11 (b) ; *In re Central Vermont Public Service Corp.,* 141 Vt. 284, 288, 449 A.2d 904, 907 (1982).

Having no evidence with which to compare petitioner's risks with those of a private utility, the Board went on to consider the second half of the statutory directive: that the return shall be "equivalent to that necessary for private utilities to assure confidence in the financial integrity of the enterprise so as to maintain its credit and attract new capital." § 2923 (a).

In seeking a 12% return on its retained earnings, petitioner contends that the retained earnings of a municipal utility are analogous to the equity of a private utility. However, as the Board so aptly points out, the retained earnings of a municipal utility's capital structure may fluctuate so widely that a rate of return that is selected without consideration of the result to be produced will lead to "anomalous and very unjust results in certain cases." By way of example, a 12% rate of return for a municipal utility that has capital investment composed of 100% debt and no retained earnings would produce no revenues beyond those needed to service the debt requirements; in terms of the statutory requirements, there would be insufficient revenues to assure its financial integrity, maintain its credit and attract new capital. Conversely, a 12% rate of return for a municipal utility having no capital debt and 100% of retained earnings (as was the case in *In re Village of Stowe Electric Department,* 134 Vt. 559, 367 A.2d 1056 (1976)) would produce revenues greatly in excess of those necessary to assure its

▉▉▉▉▉▉▉▉▉▉▉

continued financial health. We note that petitioner presently has retained earnings of $812,000 and debt in the amount of $306,000.

In order to prevent such highly disparate and irrational results, a consequence to be avoided in construing a statute, *Noble* v. *Delaware & Hudson Ry.*, 142 Vt. 156, 159, 453 A.2d 1109, 1111 (1982); *Audette* v. *Greer*, 134 Vt. 300, 302, 360 A.2d 66, 68 (1976), it is important to consider what revenues are necessary to assure the financial integrity of petitioner. In making this analysis, one must keep in mind the basic standard the Board must follow as it performs its rate-setting function.

▉▉▉▉ By statute, the Board is required to set rates that are "just and reasonable." 30 V.S.A. § 218. In addition to this long-standing guideline, § 2923 (a) echoes the mandate that the rate of return on capital investments of a municipal plant shall be "reasonable." The fundamental considerations in determining just and reasonable rates were first articulated in *Bluefield Water Works & Improvement Co.* v. *Public Service Commission*, 262 U.S. 679, 692–93 (1923), as follows:

> A public utility is entitled to such rates as will permit it to earn a return on the value of the property which it employs for the convenience of the public equal to that generally being made at the same time and in the same general part of the country on investments in other business undertakings which are attended by corresponding risks and uncertainties; but it has no constitutional right to profits such as are realized or anticipated in highly profitable enterprises or speculative ventures. The return should be reasonably sufficient to assure confidence in the financial soundness of the utility and should be adequate, under efficient and economical management, to maintain and support its credit and enable it to raise the money necessary for the proper discharge of its public duties.

As is readily apparent, § 2923 closely tracks the concepts enunciated in *Bluefield*. These principles have been consistently followed in Vermont over the years. *In re Green Mountain Power Corp.*, 131 Vt. 284, 298, 305 A.2d 571, 580 (1973); *Letourneau* v. *Citizens Utilities Co.*, 128 Vt. 129, 133, 259 A.2d 21, 23 (1969); *In re New England Telephone and Telegraph Co.*, 115 Vt. 494, 512–13, 66 A.2d 135, 143 (1949).

In fixing rates that are just and reasonable, the Board must balance the interests of the consumer and of the owners of the utility. *In re Central Vermont Public Service Corp.,* 116 Vt. 206, 216, 71 A.2d 576, 582 (1950). Rates cannot be set so low as to be confiscatory for the utility nor so high as to be excessive for the consumer. *In re New England Telephone & Telegraph Co.,* 139 Vt. 578, 586, 433 A.2d 263, 267–68 (1981). Between these extremes lies a "zone of reasonableness" within which a regulatory commission is free to set rates without judicial intervention. *Permian Basin Area Rate Cases,* 390 U.S. 747, 767 (1968) ; *In re New England Telephone & Telegraph Co., supra,* 139 Vt. at 586, 433 A.2d at 267–68.

In this case, the Board determined that a reasonable return for petitioner would be an amount equal to two times its interest earned ratio (TIER). Its interest expense for 1981, the most recent data before the Board, was $40,231. A return of 2 TIER, or $80,462, allows petitioner to meet its annual debt-service requirement of $40,231 and set aside at least an equivalent amount each year in a contingent fund for use as required. 30 V.S.A. § 2923(b). The Board concluded that the contingent fund that would result would be sufficient to assure confidence in the financial integrity of petitioner and satisfy the criteria of the statute.

In adopting this approach, the Board considered, among other things, that the TIER factor is used by bond investors as an important indicator of a margin of safety for an enterprise. In the absence of other reliable evidence upon which to determine an appropriate return, the Board felt justified in reaching the conclusion it did. However, the Board cautioned that other considerations may play more important roles in other cases. This Court has previously sanctioned other approaches taken by the Board under § 2923. *In re Burlington Electric Light Department,* 135 Vt. 114, 373 A.2d 514 (1977) (rate of return determined by using other municipal utilities as a basis for comparison) ; *In re Village of Stowe Electric Department, supra* (cost of money used as basis for determining appropriate rate of return on retained earnings).

In this case, petitioner urges that its rate of return should, at a minimum, be no less than its present cost of money, approximately 10%. However, petitioner has not demonstrated

that it needs a 10% rate of return in order to maintain its financial integrity.

When interpreting a statute, our primary objective must be to give effect to the intention of the legislature. *In re G. F.*, 142 Vt. 273, 279, 455 A.2d 805, 808 (1982) ; *Wetterau, Inc.* v. *Department of Taxes,* 141 Vt. 324, 327, 449 A.2d 896, 897 (1982). Unless there are compelling indications of error, the construction of a statute by those who are charged with its execution will be sustained on appeal. *In re Desautels Real Estate, Inc.,* 142 Vt. 326, 336, 457 A.2d 1361, 1366 (1982). The Board's analysis of § 2923 was thorough and deliberate. The result it reached is consistent with the legislative intention that municipal utilities be allowed a return equivalent to that necessary to assure the financial health of a private utility. On the basis of the record before us, we are unable to find compelling indications that the Board has erroneously construed § 2923 or failed to give effect to the intention of the legislature; such being the case, the Board's interpretation of the statute must be sustained. *In re Desautels Real Estate, Inc., supra; Wetterau, Inc.* v. *Department of Taxes, supra.*

## II.

Secondly, petitioner challenges the adequacy of the Board's findings. Under the Administrative Procedure Act, the Board is required, in a contested case, to state separately its findings of fact and conclusions of law. 3 V.S.A. § 812. In its written opinion, the Board discussed in narrative form its analysis of the evidence and issues. Much of the narrative consisted of a recitation of testimony without an explicit statement of the Board's findings. As this Court has often stated, such recitals are not sufficient to support an order, and do not comply with the requirements of the statute. *Louis Anthony Corp.* v. *Department of Liquor Control,* 139 Vt. 570, 573, 432 A.2d 1186, 1187–88 (1981). However, interspersed throughout its discussion the Board also made findings that dealt with many of the requests of the parties, the differences between privately owned and municipally owned utilities, the capital structure of petitioner, the purpose and need for a contingent fund, and the adequacy of the return it found to be sufficient to assure confidence in the financial integrity of petitioner. It

has left no doubt as to what it decided and how its decision was reached, thus fulfilling the purpose of findings of fact and conclusions of law. *Id.* at 573, 432 A.2d at 1188. The Board's findings, although "not a paragon of completeness and clarity," *Timney* v. *Worden,* 138 Vt. 444, 445, 417 A.2d 923, 924 (1980), are adequate to support its decision.

Petitioner further contends that the Board failed in its duty under 3 V.S.A. § 812 to rule upon all requests for findings that were submitted to it. It is true that the Board did not rule individually on each request, but it is not required to do so; it is sufficient if the record shows that the Board considered and decided each proposed finding. *In re Young's Community TV Corp.,* 141 Vt. 53, 57, 442 A.2d 1311, 1313 (1982). This the Board did. In its opinion it accepted many of petitioner's requests although not necessarily in petitioner's language. Any requests not previously dealt with were expressly rejected by the Board in its order. The Board fulfilled its statutory duty to rule upon all proposed findings.

## III.

Finally, petitioner contends that the Board erred in ordering refunds prior to 30 days after termination of all proceedings in this case, including appeal. However, petitioner failed to obtain a stay of the Board's order either from the Board or from this Court. Unless and until there is a stay, the Board's order remains in effect as issued. 30 V.S.A. §§ 3, 12. See *In re Allied Power & Light Co.,* 132 Vt. 554, 326 A.2d 160 (1974). No error appears.

*Affirmed.*