122

## In re Tariff Filing of Quechee Water Co. Requesting a Sixty Percent Increase in Rates, and Revisions to its Rules and Regulations

[615 A.2d 1026]

No. 91-218

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed August 28, 1992

*James B. Anderson* and *Kimberly K. Hayden* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Plaintiff-Appellant.

*Geoffrey Commons*, Special Counsel, Montpelier, for Defendant-Appellee.

**Morse, J.** Quechee Water Company, Inc. (QWC) appeals from an order of the Vermont Public Service Board granting a net rate increase of one-and-a-half percent instead of the sixty percent increase requested by QWC. QWC claims its rate request became "effective and final" by operation of the default provision in 30 V.S.A. § 227(a), governing the time allowed the Board to rule on rate requests. QWC also argues that it carried its burden of showing the reasonableness of the requested rate and that the Board erred in granting such a minimal increase. We conclude that the Board acted timely and within its authority, and affirm.

QWC has 500 customers in the Village of Quechee, Town of Hartford, Vermont. Hartford operates and maintains the water system pursuant to an agreement with QWC made in 1979. The water system serves the Quechee Lakes resort development as well as the town residents. QWC pays Hartford a proportionate share of the operating and maintenance costs.

QWC filed its rate request on July 25, 1990, asking that temporary rates be allowed if the permanent requested amount was not permitted to go into effect until the Board made a final determination. Permanent rates were suspended, and temporary rates were put into effect by QWC on October 1, 1990. On May 1, 1991, after reviewing the recommendations of the Department of Public Service, the Board concluded that QWC failed to adequately substantiate the reasonableness of the following cost-of-service items: (1) the annual $40,000 management fee paid by QWC to its affiliate, Quechee Lakes Corporation; and (2) the $10,000 fee allocated to QWC as its share of legal and professional fees incurred in connection with the Securities and Exchange Commission filings of QWC's parent, NECO Enterprises, Inc.

QWC first argues that the rate increase should go into effect by default because the Board failed to rule within the statutory time frame. The relevant provision, 30 V.S.A. § 227(a), states:

> If the board orders that a change shall not go into effect until final determination of the proceedings, it shall proceed to hear the matter as promptly as possible and shall make its determination within seven months from the *date that the change otherwise would have gone into effect.* If the board fails to make its determination within such time, the changed rate schedules filed by the company shall become effective and final. (Emphasis added.)

Central to this dispute is the proper construction of the phrase "date that the change otherwise would have gone into effect." QWC claims that this term refers to September 8, 1990, which is forty-five days after the Board received its application. This interpretation relies principally on 30 V.S.A. § 225(a) (change in rates shall not be made "except upon forty-five days' notice to the board and to the department of public service . . . .

All such changes shall be plainly indicated . . . by filing new schedules . . . forty-five days prior to the time the same are to take effect."). According to QWC, forty-five days after filing is the date on which the seven-month period starts to run. Thus, because the Board did not rule on QWC's rate application until May 1, 1991, which is more than seven months after that point, the rate increase went into effect by operation of law.

QWC misinterprets in this case when the seven-month time period began. QWC asserts that the phrase "date that the change otherwise would have gone into effect" under 30 V.S.A. 227(a) must be forty-five days after filing, the earliest effective date under 30 V.S.A. § 225(a) ("change in rates . . . are to take effect"). We disagree. The effective date referred to in § 225(a) does not *always* fall exactly forty-five days after filing. See, e.g., *In re Central Vermont Public Service Corp.*, 144 Vt. 46, 49, 473 A.2d 1155, 1156 (1984) (proposed rates to go into effect forty-seven days after the date of filing); *In re Central Vermont Public Service Corp.*, 141 Vt. 284, 289, 449 A.2d 904, 907 (1982) (under 30 V.S.A. § 225(a), "[u]tility rates are usually effective forty-five days after the date of the original filing.").

The effective date may be later than forty-five days after filing, because the normal billing schedules of utilities vary, depending on whether they bill in arrears or in advance. For example, if the billing schedule is such that actual implementation of the rate increase would have occurred more than forty-five days from the filing date, the seven-month period would not begin to run until the ratepayers are actually subject to a change in rates. If a utility chooses to file a rate request more than forty-five days before the change would actually go into effect, that is, before the rates would be priced at the new, higher rate, the seven-month period does not begin to run until the later date.

QWC billed quarterly and in advance. The next quarterly billing date after the original filing date was October 1, 1990, the first date on which customers were actually subjected to increased rates. Therefore, the seven-month period ended on May 1, 1991, and the Board's ruling denying the requested rate increase just barely met the deadline.

■ Finally, we reject QWC's claim that the Board was "arbitrary and capricious" and "confiscatory" in greatly reducing

QWC's rate request. The order from which QWC appeals was not clearly erroneous. 30 V.S.A. § 11(b); see *In re Village of Lyndonville Electric Department,* 149 Vt. 660, 660, 543 A.2d 1319, 1320 (1988) (strong presumption that Board's orders are correct, and party challenging order must prove it is clearly erroneous). The Board, in assessing the reasonableness of the rate increase request, found that the $40,000 "management fee" charged QWC by its affiliate, Quechee Lakes Corp., and the $10,000 fee charged for Quechee's share of its parent's SEC compliance costs were unreasonable. See *In re Green Mountain Power Corp.,* 131 Vt. 284, 303, 305 A.2d 571, 583 (1973) (Court "must accord proper deference to the expert and informed judgment of the Board").

QWC did not submit officers' or employees' time slips or an audited statement indicating a breakdown of time spent on QWC matters to justify the $40,000 overhead cost. In addition, there was testimony that if the parent company, NECO, were not publicly traded, the legal and professional expenses of QWC would be less than $10,000, and that the expense incurred as a result of NECO being publicly traded did not increase Quechee's quality of water. It instead accepted the recommendations of the Department of Public Service, which were based on calculations of QWC's administrative overhead expenditures, but reflected a lower cost of service figure. Because the Board acted within its authority in granting a one-and-a-half percent rate increase, we will not upset its order on review.

*Affirmed.*